DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Domestic Relations Division, in a final divorce decree. Because we conclude that the trial court did not err in approving the consent agreement entered on the record by the parties, we affirm.
 {¶ 2} Appellant, Rosita Kerwin, nka Rosita Garza, and appellee, Charles P. Kerwin, were married in 1986; one child, Amanda, was born to them a year later. In April 2003, Rosita sought and was granted a domestic relations civil protection order against Charles. The parties each filed for divorce the next month and temporary orders for child and spousal support were issued. Ultimately, the parties settled and entered a consent agreement at the final hearing on November 26, 2003 regarding property division, child support, and spousal support. Each party retained personal pensions and retirement benefits. After questioning the parties, the trial court accepted the agreement and entered final judgment granting the divorce on November 26, 2003.
 {¶ 3} Rosita now appeals from that judgment, setting forth the following two assignments of error:
"Assignment of Error No. I.
 {¶ 4} "The trial court erred and abused its discretion by approving the Final Judgment Entry of Divorce filed on November 26, 2003.
"Assignment of Error No. II.
 {¶ 5} "The trial court erred by approving the Final Judgment Entry of Divorce when Appellant was not afforded effective assistance of counsel."
 I. {¶ 6} In the first assignment of error, Rosita argues that final judgment entry excluded pension valuations; incorrectly calculated temporary child support arrearages, credits for marital home repairs, and Rosita's income on the child support worksheet; and did not provide for a Qualified Domestic Relations Order.
 {¶ 7} A settlement agreement entered into in the presence of the court becomes a binding contract. Walther v. Walther
(1995), 102 Ohio App.3d 378, 383. A trial court has the discretion to accept a settlement agreement once it is satisfied that the agreement was not procured by "fraud, duress, overreaching or undue influence." Id. A party cannot attempt to repudiate a settlement agreement by simply asserting a change of heart or an assertion of poor legal advice. Id.; Perko v.Perko, 11th Dist. Nos. 2001-G-2403, 2002-G-2435, and 2002-G-2436, 2003-Ohio-1877, at ¶ 27. Moreover, a trial court has no duty to assess whether the terms of a property settlement are equitable. Id.
 {¶ 8} Furthermore, unless specifically preserving its right to appeal, a party participating in a consent judgment will not be allowed to appeal errors from that judgment. SanitaryCommercial Servs., Inc. v. Shank (1991), 57 Ohio St.3d 178, 181, citing Wells v. Warrick Martin Co. (1853), 1 Ohio St. 386, at the syllabus. "`The purpose of a consent judgment is to resolve a dispute without further litigation, and so would be defeated or at least impaired by an appeal. The presumption, therefore, is that the consent operates as a waiver of the right to appeal. It is because the parties should not be left guessing about the finality and hence efficacy of the settlement that any reservation of a right to appeal should be explicit.'" TradesmenInt'l v. Kahoe (Mar. 16, 2000), 8th Dist. No. 74420, quotingAssn. of Community Orgs. for Reform Now v. Edgar (C.A. 7, 1996), 99 F.3d 261, 262.
 {¶ 9} In this case, Rosita did not preserve any right to appeal the settlement agreement entered on the record. Therefore, she has waived any right to appeal other than whether the trial court abused its discretion in accepting the agreement. Rosita first argues that Charles improperly concealed information about his pension benefits accumulated during the marriage. She acknowledges, however, that this information was presented to her attorney before the final hearing through responses to discovery requests. Although not in the final judgment entry, she cannot say that the existence or value of any pensions were fraudulently hidden from her.
 {¶ 10} Next, Rosita argues that the trial court improperly listed Charles' arrearage for temporary child support and spousal support as $630, when it should have been $2,592.81. We note that the trial court's calculations were based upon information it had at the time of the hearing held November 26, 2003. The court indicated that Charles had a combined arrearage for child and spousal support of $2,387.00 accrued through September 19, 2003. It then offset this amount by $1,757.82, the amount he paid on Rosita's behalf for August and September mortgage and utility bills. Since the court used the current figures at the time of the hearing and simply offset an amount Rosita owed to Charles, the trial court's calculations were proper. Any arrearage accrued after September 19, 2003 would still be owed by Charles and could be calculated and enforced by the child support agency.
 {¶ 11} Rosita also contends that the trial court improperly calculated her income on the child support worksheet. Since Rosita has some secretarial skills, even though she was not employed at the time of the divorce, the court imputed to her an annual income of $10, 712. Based upon a 40 hour work week, this figure amounts to wages of approximately $5 per hour, a reasonable amount. On the worksheet, the court subtracted spousal support of $12,000 per year from Charles' income. This $12,000 per year was then properly added to Rosita's annual income. Therefore, Rosita's claim that her total income was improperly calculated to be $22,712 is without merit and the trial court correctly calculated child support.
 {¶ 12} Rosita claims that the trial court failed to enforce an order regarding repairs to be made to the marital residence pending the divorce. She contends that she paid for $3,200 in repairs, but that Charles never reimbursed her. In its judgment entry, however, the trial court charged each party with one half of "$3,500" for these repairs. The record is silent on whether Charles paid for the repairs as ordered by the court, but Rosita did not object or call this alleged discrepancy to the court's attention at the final hearing. Since the final judgment was entered based upon consent of the parties, we cannot say that the trial court erred in its calculations regarding the credit for the plumbing repairs.
 {¶ 13} As for Rosita's comprehension of the agreement terms, the record contains nothing showing that she did not understand or voluntarily consent to the terms of the agreement. The trial court took extra measures to ensure that Rosita understood the agreement which had been read to her in her attorney's office. On the record, she was asked several times if she had any questions or was confused about anything in the agreement. Her questions and responses to the court do not indicate any difficulty speaking or understanding the English language. Other than the "name change" provision, Rosita did not indicate any confusion or dissatisfaction with the agreement.
 {¶ 14} The record does reveal that Rosita no longer wanted to be near to or married to Charles. She had already obtained a civil protection order and stated that she did not ever want to see him again. She even asked the court whether the parties' 16-year-old daughter could be made to see her father if she did not want to go on visitations. From Rosita's statements and attitude, it can be inferred that, in wanting to be divorced from Charles, she may have simply decided to permit Charles to keep his pension in exchange for ending the divorce quickly. Regardless of her motive, however, Rosita voluntarily stated in open court that she understood and agreed to the terms of the settlement agreement which stated that the parties would keep their own pension benefits. Since there was no division of pension benefits, no QDRO was needed.
 {¶ 15} As Rosita does not have evidence that she did not understand the agreement or that it was forced upon her, the trial court had discretion to accept it. Accordingly, the first assignment of error is not well-taken.
 II. {¶ 16} In her second assignment of error, Rosita claims that the trial court erred in approving the final judgment entry because she did not receive effective assistance of counsel.
 {¶ 17} A complaint of ineffective assistance of counsel is not a proper ground on which to reverse the judgment of a lower court in a civil case where the attorney was employed by a civil litigant. Roth v. Roth (1989), 65 Ohio App.3d 768, 776. InRoth, this court stated:
 {¶ 18} "The Sixth Amendment to the United States Constitution provides a right to effective assistance of counsel in a criminal proceeding. Strickland v. Washington (1984), 466 U.S. 668, 686, * * *. The right to be represented by counsel in a civil proceeding where the state seeks to take the defendant's life, liberty, or property is guaranteed by the Fifth Amendment to the United States Constitution as applied to the states by theFourteenth Amendment. However, in a civil case between individual litigants, there is no constitutional right to representation. The state does provide a forum, via the judicial system, in which litigants can resolve disputes. Litigants may seek to be represented in this forum by attorneys trained in procedure and the law. But it is the litigant himself who selects that attorney. Therefore, the litigant cannot thereafter complain that his attorney was ineffective and require the other litigant to bear the loss for such negligent selection of an attorney. SeeLink v. Wabash RR. Co. (1962), 370 U.S. 626, 633-634, * * *. * * * [A]ny complaint of ineffective assistance of counsel may only be resolved in a malpractice action."
 {¶ 19} In the present case, Rosita was represented by private counsel, not an attorney appointed by the court. Therefore, her claim of ineffective assistance of counsel has no merit. If Rosita wishes to pursue a claim against her trial counsel, any alleged deficiencies in her representation may be addressed by either a malpractice action or a disciplinary grievance. Accordingly, the second assignment of error is not well-taken.
 {¶ 20} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Pursuant to App.R. 24, court costs of this appeal are assessed to appellant.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Lanzinger, J., Singer, J., Concur.