[Cite as *Salpietro v. Salpietro*, 2023-Ohio-169.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY


Gina Salpietro                                    Court of Appeals No.  WD-22-028

      Appellant                              Trial Court No.  2021-DR-0037

v.

Benjamin J. Salpietro, Jr.                      **DECISION AND JUDGMENT**

      Appellee                                Decided:  January 20, 2023

* * * * *

Drew Hanna, for appellant.

Julie S. Hoffman, for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Gina Salpietro, appeals the April 5, 2022 judgment of the Wood County Court of Common Pleas, Domestic Relations Division, granting her and appellee, Benjamin Salpietro Jr., a divorce.  With one small modification, we affirm the trial court's decision.

# I. Background and Facts[1]

{¶ 2} Gina and Benjamin married in 1990 and separated in 2020. Benjamin is an orthopedic surgeon, and Gina was a homemaker for much of the parties' marriage. They have three emancipated children together.

{¶ 3} Although they began a contested divorce trial, by the start of the second day, they had "reached an agreement * * * on everything except spousal support and legal fees." At the request of Gina's attorney, Benjamin's attorney read the terms of the parties' settlement into the record. They agreed on the distribution of personal property, how to handle marital funds in a joint bank account, issues involving automobile loans, terms for selling the marital home, issues with filing their tax returns, who was responsible for paying specific bills, Benjamin procuring a life insurance policy with Gina as the beneficiary, and distribution of Benjamin's interests in two businesses. Two terms of the agreement are particularly relevant here. First, the parties agreed that Benjamin would give Gina a lump sum cash payment to compensate her for half of Benjamin's interest in a medical office building that generates rental income and in a surgical consulting business. Because Benjamin was paying Gina for her interest in the rental property and the consulting business, the parties agreed that the trial court's spousal support award should be based solely on the income he earns from his surgical practice.

---

[1] For ease of discussion, we present a cursory summary of the facts here, and will discuss the facts in more detail as they become relevant to Gina's assignments of error.

**{¶ 4}** After Benjamin's attorney recited the agreement, Gina's attorney "conferred with [his] client * * *" and said that "what [Benjamin's attorney] has recited is an accurate statement of the settlement." Later, when Benjamin's attorney clarified that they had also agreed that the court's spousal support award should be based only on Benjamin's income from his surgical practice because Benjamin was giving Gina a cash payment for her half of his interests in the rental property and the consulting business, Gina's attorney simply responded, "So agreed."

**{¶ 5}** Following the divorce hearing, the trial court issued its decision on spousal support and attorney fees. The court made findings regarding all of the factors in R.C. 3105.18(C)(1), which controls an award of spousal support. The court ultimately decided to award Gina spousal support of $13,000 per month for four years, followed by $10,000 per month for ten years, and then $6,000 per month indefinitely. Specifically, the court's decision said:

> IT IS ORDERED that on May 1, 2022 and on the first day of each month for the following 48 months defendant Benjamin Salpietro shall pay to plaintiff Gina Salpietro $13,000 as spousal support; that on May 1, 2026 and on the first day of each month for the following 120 months defendant Benjamin Salpietro shall pay to plaintiff Gina Salpietro $10,000 as spousal support; and that on May 1, 2032 and on the first day every ensuing month thereafter defendant Benjamin Salpietro shall pay to plaintiff Gina Salpietro $6,000 as spousal support.

3.

The court also awarded Gina $25,000 for attorney fees, which was in addition to $10,000 in fees that Benjamin was ordered to pay earlier in the litigation. Gina's total award for attorney fees was $35,000.

{¶ 6} Additionally, the trial court ordered Benjamin's attorney to prepare a proposed judgment entry incorporating the terms of the parties' settlement and the trial court's decision on spousal support and attorney fees. Benjamin's attorney certified that she sent the proposed entry to Gina's attorney on March 22, 2022, and that he had not responded, objected, or countered with his own proposed entry. On April 5, 2022, the trial court signed and filed the entry that Benjamin's attorney prepared.

{¶ 7} Gina now appeals, raising ten assignments of error:

1. The Court Errs and Abuses its discretion by approving the proposed Divorce Decree without giving the Appellant/Plaintiff an opportunity to Object to the proposed Decree, containing major errors.

2. It is Error by the Court to limit Appellee/Defendant's income for Spousal Support to just his income as a Surgeon.

3. The Court Errs in ruling there was no Financial Misconduct by the Appellee/Defendant.

4. The Court Errs by not considering the contributions Appellant/Plaintiff made to the Appellee/Defendant in completing Appellee/Defendant's Surgical Residency.

4.

5. The Court Errs by failing to order Appellee/Defendant to pay Appellant/Plaintiff's health, dental, and optical insurance.

6. The Court Errs by reducing Appellant/Plaintiff's Spousal Support over time.

7. The Court Errs by limiting Spousal Support to $13,000 per month.

8. The Court Errs by making a clerical error in the Spousal Support Payment Schedule.

9. The Court Errs by not requiring Appellee/Defendant's Spousal Support Payments to be made by Bank Withholding.

10. The Court Errs in granting inadequate Attorney Fees to the Appellant/Plaintiff.

## II. Law and Analysis

{¶ 8} In her assignments of error, Gina argues that the trial court (1) erred by adopting the final decree of divorce prepared by Benjamin's attorney, (2) committed numerous errors in reaching its spousal support award, (3) made a clerical error in the spousal support schedule, (4) should have found that Benjamin committed financial misconduct, (5) should have ordered Benjamin to pay spousal support through bank withholding, and (6) did not award Gina enough attorney fees. We address each argument in turn.

**A. We must disregard items that are not in the trial court record.**

{¶ 9} As a preliminary matter, we note that Gina makes multiple arguments based on information that is not in the appellate record. Appellate review of a trial court's order is limited to the record made in the trial court. *Fifth Third Bank v. Fin. S. Office Partners, Ltd.*, 2d Dist. Montgomery No. 23762, 2010-Ohio-5638, *3, citing *Durrstein v. Durrstein*, 2d Dist. Montgomery No. 18688, 2001 WL 1203014 (Oct. 12, 2001). The record that we can consider is "the record as it existed at the time the trial court rendered judgment." *Leiby v. Univ. of Akron,* 10th Dist. Franklin No. 05AP-1281, 2006-Ohio-2831, ¶ 7, citing *Chickey v. Watts,* 10th Dist. Franklin Nos. 04AP-818 and 04AP-1269, 2005-Ohio-4974, ¶ 14; *Baker v. Senior Emergency Home Repair EOPA*, 6th Dist. Lucas No. L-14-1203, 2015-Ohio-3083, ¶ 11, quoting *State v. Ishmail,* 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus ("Ohio law is clear that we must limit our review on appeal to the record before the court at the time of judgment: 'A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings and then decide the appeal on the basis of the new matter.'"). We cannot consider any exhibits attached to the parties' briefs that were not made part of the trial court's record. *Star Mgt., LLC v. Fayne*, 6th Dist. Lucas No. L-12-1342, 2014-Ohio-2319, ¶ 7.

{¶ 10} Basically, absent some legal authorization, we cannot consider facts that were not presented to the trial court; documents that were not filed with, admitted into evidence by, or proffered to the trial court; or any acts that occurred or issues that arose

6.

after a party filed their notice of appeal. *Baker* at ¶ 11; *see also In re Beck,* 7th Dist. Belmont No. 00 BA 52, 2002-Ohio-3460, ¶ 21. An exhibit attached to a party's appellate brief—but not filed with the trial court—is not part of the record. *In re K.Y.*, 8th Dist. Cuyahoga No. 109111, 2020-Ohio-4140, ¶ 9, citing *Lisboa v. Lisboa*, 8th Dist. Cuyahoga No. 95673, 2011-Ohio-351, ¶ 10.

{¶ 11} With that in mind, in reviewing Gina's assignments of error, we will disregard (1) any factual information that the parties included in their briefs that is not supported by something in the trial court's record as it existed on May 3, 2022, when Gina filed her notice of appeal; (2) the exhibits that Gina attached to her brief that were not admitted at the divorce trial or otherwise filed with the trial court; (3) Gina's attorney's emails; (4) several unfiled motions that Gina included in her brief; (5) Gina's proposed final decree (which the trial court did not adopt and is not in the trial court record); and (6) the email and proposed final entry from Gina's attorney that Benjamin attached to his brief.

**B. Gina cannot appeal the portions of the divorce decree that she consented to.**

{¶ 12} Gina's second and third assignments of error each relate to portions of the final decree that Gina agreed to in her settlement with Benjamin. In her second assignment of error, Gina contends that the trial court abused its discretion in considering and applying the spousal-support factors in R.C. 3105.18(C)(1). She argues that the trial court erred by limiting Benjamin's income for spousal support purposes to the wages he made from his surgical practice, rather than including his income from other sources,

7.

including the rental property and consulting business.  In her third assignment of error, Gina argues that the trial court erroneously determined that Benjamin did not commit financial misconduct because, she claims, he "dissipated" over $358,000 of marital assets within the meaning of R.C. 3105.171(E)(4) in the 16 months leading up to the final divorce hearing.  Because Gina consented to the trial court limiting Benjamin's income and to all parts of the property settlement, she cannot now appeal those issues.

{¶ 13} As the Ohio Supreme Court recognized almost a century ago, when "a consent decree has been entered by the court, such a decree is not even subject to direct attack, except for irregularity or fraud in its procurement." *Sponseller v. Sponseller*, 110 Ohio St. 395, 399, 144 N.E. 48 (1924), citing *Harding v. Harding*, 198 U.S. 317, 335, 25 S.Ct. 679, 49 L.Ed. 1066 (1905); *Schenk v. Mohre*, 6th Dist. Wood No. WD-83-33, 1983 WL 6982, * 1 (Oct. 28, 1983) ("[I]t is well settled that a judgment of a court of competent jurisdiction, entered by consent of the parties, will not be reversed on error and is binding and conclusive between the parties in the absence of fraud."); *see also Shanks v. Shanks*, 4th Dist. Ross No. 96CA2252, 1997 WL 114397, *4 (Mar. 10, 1997) (A divorce decree based on a settlement agreement reached by the parties is "effectively [a] consent judgment[] * * *.").  We have explicitly held that "unless specifically preserving its right to appeal, a party participating in a consent judgment will not be allowed to appeal errors from that judgment." *Kerwin v. Kerwin*, 6th Dist. Lucas No. L-04-1002, 2004-Ohio-4676, ¶ 8, citing *Sanitary Commercial Servs., Inc. v. Shank*, 57 Ohio St.3d 178, 181, 566 N.E.2d 1215 (1991); and *Wells v. Warrick Martin & Co.*, 1 Ohio St. 386

8.

(1853), syllabus. This is because "[t]he purpose of a consent judgment is to resolve a dispute without further litigation, and so would be defeated or at least impaired by an appeal. The presumption, therefore, is that the consent operates as a waiver of the right to appeal." (Internal quotation omitted.) *Id.*, citing *Tradesmen Internatl., Inc. v. Kahoe*, 8th Dist. Cuyahoga No. 74420, 2000 WL 283081 (Mar. 16, 2000); and *Assn. of Community Orgs. for Reform Now v. Edgar*, 99 F.3d 261, 262 (7th Cir.1996).

{¶ 14} In this case, on the second day of trial, Benjamin's attorney informed the court that the parties had "reached an agreement * * * on everything except spousal support and legal fees." In addition to the 90 minutes that the parties spent negotiating before the trial began, Gina's attorney conferred with Gina after asking the court for "guidance" on the remaining triable issues (i.e., spousal support and attorney fees). Following that conference, Gina's attorney told the court that "[they]'re ready to proceed." At Gina's attorney's request, Benjamin's attorney read the parties' agreement into the record. After she recited the agreement, Gina's attorney "conferred with [his] client [Gina]," and said that "*what [Benjamin's attorney] has recited is an accurate statement of the settlement.*" (Emphasis added.) In addition to Gina's attorney agreeing to the terms as recited by Benjamin's attorney, Gina did not personally voice any objections about the settlement or its terms (although she did interject to clarify terms at least twice).

{¶ 15} As part of the settlement, the parties agreed that only Benjamin's surgical income should be considered for purposes of determining spousal support because

9.

Benjamin was giving Gina a cash payment equivalent to half of the value of his interest in his rental property and his consulting business. The parties also believed that the issue of financial misconduct was resolved by the settlement, as evidenced by (1) their representations to the court that the only remaining issues were spousal support and attorney fees, (2) the transcript of the second day of the divorce trial being devoid of any reference to financial misconduct, (3) Benjamin's attorney failing to question Benjamin about the financial misconduct allegations during his direct testimony, and (4) Gina's attorney specifically withdrawing the exhibits related to financial misconduct after the court noted that "a lot of" Gina's exhibits from the first day of trial were "not terribly relevant in consideration of the settlement that you've reached[.]"

{¶ 16} As discussed below, the proposed judgment entry that the trial court signed and filed as the final divorce decree accurately represents the parties' agreement, and Gina does not allege any "irregularity or fraud in [the agreement's] procurement." *Sponseller* at 399. Thus, because the divorce decree is a consent judgment that was properly procured, Gina cannot appeal the portions of the judgment that she agreed to. *Id.*; *Schenk* at *1; *Kerwin* at ¶ 8. Accordingly, Gina's second and third assignments of error are not well-taken.

### C. The trial court properly approved the proposed decree submitted by Benjamin's attorney.

{¶ 17} In her first assignment of error, Gina argues that the trial court improperly approved the proposed final decree of divorce prepared by Benjamin's attorney, and that

the proposed decree "contain[ed] major [e]rrors." Although she contends that the trial court violated its local rules by not giving her 14 days to object to the contents of the proposed decree before the judge signed and filed it, Gina's real complaint under this assignment of error is that the final decree did not preserve her right to pursue Benjamin for violations of the parties' temporary support order. Benjamin responds that his attorney complied with the local rule, the trial judge signed the final order after the appropriate time had passed, and Gina's attorney did not attempt to object to the proposed decree until after the time for objecting had passed.

{¶ 18} Under Local Rule 4.05(B)(4) of the Court of Common Pleas of Wood County, General Division, after an attorney who is ordered to prepare a judgment entry submits the proposed entry to opposing counsel, opposing counsel can either sign the entry or respond to preparing counsel with an entry containing proposed modifications. If opposing counsel does not respond within 14 days, preparing counsel is required to submit their proposed entry to the court with a certification statement indicating that preparing counsel sent the proposed entry to opposing counsel, the date it was sent, the manner in which it was sent, and that the proposed order "HAS NOT BEEN RETURNED, REVISED NOR [sic] OBJECTED TO." Local Rule 4.05(B)(5); *see also* Local Rule 6.11(I) (Proposed entries in domestic relations cases "shall conform to Local Rule 4.05 and shall contain the certification in Local Rule 4.05(B)(5) if the attorney who prepared the entry has not received a response from the opposing attorney * * *."). The rule also requires opposing counsel who does not agree with preparing counsel's

11.

proposed entry to "prepare and submit to the original preparing counsel an entry with proposed modification * * *."  Local Rule 4.05(B)(4).

{¶ 19} Generally speaking, when the parties put the terms of their settlement on the record in open court, the trial court is free to adopt a proposed entry that accurately reflects the terms of the settlement, unless the record reflects some objection by the non-drafting party.  *See, e.g., Johnson-Rome v. Rome*, 2d Dist. Montgomery No. 27200, 2017-Ohio-4099, ¶ 7; *Benz v. Benz*, 11th Dist. Geauga No. 2004-G-2589, 2005-Ohio-5870, ¶ 14.  This is because an in-court settlement is a binding contract between the parties that neither party can repudiate unless they prove fraud, duress, overreaching, undue influence, or a factual dispute about the terms of the agreement.  *Wade v. Wade*, 6th Dist. Fulton No. F-02-14, 2003-Ohio-686, ¶ 7, citing *Walther v. Walther*, 102 Ohio App.3d 378, 383, 657 N.E.2d 332 (1st Dist.1995); and *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 285 N.E.2d 324 (1972), paragraph one of the syllabus.  Thus, it is not error for a trial court to adopt a proposed entry that one party submits in compliance with the court's local rules when the other party remains silent or fails to comply with the local rules.  *See Johnson-Rome* at ¶ 8 (no error when opposing party failed to object to drafting party's proposed entry as required by the local rules); *compare Bd. of Twp. Trustees of Thorn Twp. v. Roberts*, 5th Dist. Perry No. 02 CA 2, 2002-Ohio-5804, ¶ 15-17 (trial court erred by adopting one party's proposed entry before the expiration of the time specified in the local rules for the opposing party to object).

12.

{¶ 20} Based on the record before us, there is nothing indicating that the trial court or Benjamin's attorney failed to comply with Local Rule 4.05(B). The parties entered into a binding settlement of all issues except spousal support and attorney fees, which neither party can repudiate without showing fraud, duress, overreaching, undue influence, or a factual dispute about the terms of the agreement. *Wade* at ¶ 7. Gina does not argue that any of those exceptions apply in this case.

{¶ 21} The certification on the entry that Benjamin's attorney prepared (and the trial court signed) shows that she sent the proposed entry to Gina's attorney on March 22, 2022. Local Rule 4.05(B)(4) then put the burden on Gina's attorney to either approve and sign the proposed entry or submit a modified proposed entry to Benjamin's attorney. When Benjamin's attorney did not receive a response from Gina's attorney "within 14 days"—in this case, by April 5, 2022—she was required by Local Rule 4.05(B)(5) to submit her proposed entry to the court with the certification that she had sent the entry to Gina's attorney on March 22, and that Gina's attorney had not returned, revised, or objected to the entry. Beyond that 14-day window for objections, Local Rule 4.05 does not dictate when the trial court can or must sign a proposed entry. And the trial court here chose to sign and file Benjamin's proposed entry at the end of the day on April 5. The record does not reflect that Gina alerted the trial court to her objections by, for example, filing a motion to rescind the parties' settlement agreement or seeking relief from judgment under Civ.R. 60(B); in fact, the trial court's docket shows that Gina did

13.

not file anything other than her notice of appeal and its related documents until more than four months after the trial court entered the final divorce decree.[2]

{¶ 22} Moreover, assuming that the trial court erred by signing Benjamin's proposed entry, Gina cannot show that the trial court's actions prejudiced her. The parties entered into a binding in-court settlement of all issues except spousal support and attorney fees. The terms of the parties' divorce that Benjamin's attorney included in the proposed decree are the same as the terms that Benjamin and Gina agreed to on the record before the second day of the trial began. And (with the exception of the clerical error discussed under Gina's eighth assignment of error) the entry also accurately reflects the trial court's findings on spousal support and attorney fees. A party cannot establish prejudicial error when the trial court adopts a proposed entry that accurately reflects the parties' settlement agreement. *Benz*, 11th Dist. Geauga No. 2004-G-2589, 2005-Ohio-5870, at ¶ 20.

{¶ 23} Gina's real complaint under this assignment of error is that the trial court's final entry did not preserve her right to pursue Benjamin for violations of the parties' temporary support order. However, unless a temporary order is reduced to a separate judgment or specifically referred to in the final decree, all temporary orders merge into the final decree of divorce and become moot. *Row v. Row*, 6th Dist. Lucas No. L-21-

---

[2] Although we are not considering the non-record exhibits that the parties submitted with their briefs in reaching our decision, we parenthetically note that Gina's attorney did not submit anything purporting to be an objection to the proposed entry to the trial court until after the court was closed on April 5—i.e., after the time to object had fully passed.

14.

1231, 2022-Ohio-2525, ¶ 54, citing *Dimmerling v. Dimmerling*, 7th Dist. Noble No. 18 NO 0460, 2019-Ohio-2710, ¶ 140-141; *Cotter v. Cotter*, 9th Dist. Summit No. 25656, 2011-Ohio-5629, ¶ 10; and *Colom v. Colom*, 58 Ohio St.2d 245, 389 N.E.2d 856 (1979), syllabus.  A party's right to enforce any temporary or interlocutory order that is not reaffirmed by a separate judgment or incorporation into the final decree is extinguished when the trial court issues the final decree.  *Id.*

{¶ 24} Here, there is nothing in the record showing that the trial court reduced an obligation Benjamin had under the temporary order to a separate judgment, and there is no mention of the temporary order in the final decree.[3]  The parties told the trial court on the second day of the divorce trial that they had settled all issues except spousal support and attorney fees, but the settlement agreement that Benjamin's attorney read into the record—and that Gina's attorney agreed with—did not include any terms related to Benjamin's obligations under the temporary order.  Because the final decree disposed of all matters before the court, the temporary order merged into the final decree, rendering any violations of the temporary order moot.  *Row* at ¶ 54-55.  Moreover, to the extent that Gina agreed to forego prosecuting violations of the temporary order by entering into a

---

[3] In July 2021, Gina filed two motions to hold Benjamin in contempt for violating the temporary order.  Although the record shows that the magistrate held a hearing in July 2021—apparently to address contempt motions filed by both parties—the transcript of that hearing is not in the record, and neither the magistrate nor the trial court filed any entries or orders related to the contempt motions.  However, when the trial court fails to expressly decide a pretrial motion at the conclusion of the case, we presume that the motion is denied.  *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 13, citing *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998).  Therefore, we presume that the trial court denied Gina's motions.

15.

settlement agreement and consent decree without reserving the right to appeal, she cannot now object to the trial court's judgment entry on that basis. *Sponseller*, 110 Ohio St. at 399, 144 N.E. 48; *Kerwin*, 6th Dist. Lucas No. L-04-1002, 2004-Ohio-4676, at ¶ 8.

{¶ 25} Because there is no evidence in the record showing that the trial court violated the court's local rules or otherwise improperly signed the proposed final entry, the temporary order merged into the final decree, and Gina waived her right to appeal this issue, we find that Gina's first assignment of error is not well-taken.

### D. The trial court properly awarded spousal support.

{¶ 26} Gina's fourth, fifth, sixth, seventh, eighth, and ninth assignments of error address issues related to the trial court's award of spousal support. With the exception of a clerical error in the support schedule, we find that the trial court did not abuse its discretion in issuing the spousal support award.

### 1. Standard of review

{¶ 27} We review a trial court's judgment awarding spousal support for abuse of discretion. *King v. King*, 6th Dist. Erie No. E-17-072, 2019-Ohio-1561, ¶ 8, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990); and *Bowen v. Bowen*, 132 Ohio App.3d 616, 626, 725 N.E.2d 1165 (9th Dist.1999). Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996). An unreasonable decision is one that lacks sound reasoning to support the decision. *Hageman v. Bryan City Schools*, 10th Dist. Franklin No. 17AP-742, 2019-Ohio-223, ¶ 13, citing *AAAA*

16.

*Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard." *Id.*, citing *Porter, Wright, Morris & Arthur, LLP v. Frutta del Mondo, Ltd.*, 10th Dist. Franklin No. 08AP-69, 2008-Ohio-3567, ¶ 11. And an unconscionable decision is one "that affronts the sense of justice, decency, or reasonableness." *Id.*

{¶ 28} Although a trial court has broad discretion in awarding spousal support, its determination of whether spousal support is "appropriate and reasonable," and the nature, amount, duration, and terms of payment of spousal support is controlled by the factors in R.C. 3105.18(C)(1). *King* at ¶ 8, citing *Crites v. Crites*, 6th Dist. Wood Nos. WD-04-034 and WD-04-042, 2004-Ohio-6162, ¶ 26-27; and *Schultz v. Schultz*, 110 Ohio App.3d 715, 724, 675 N.E.2d 55 (10th Dist.1996). A trial court is not required to articulate each R.C. 3105.18(C)(1) factor in its decision, but the court's judgment entry must show that it considered all the "relevant factors." *Id.*, citing *Stockman v. Stockman*, 6th Dist. Lucas No. L-00-1053, 2000 WL 1838937, *3 (Dec. 15, 2000). The trial court's judgment entry must also "contain sufficient detail to enable a reviewing court to determine that the spousal support award is 'fair, equitable and in accordance with the law.'" *Crites* at ¶ 27, quoting *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 97, 518 N.E.2d 1197 (1988).

{¶ 29} Under R.C. 3105.18(C)(1), when determining whether awarding spousal support is "appropriate and reasonable" and deciding the terms of any award, the trial court is required to consider:

17.

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed [as part of the divorce proceedings] under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 30} The trial court cannot consider any single R.C. 3105.18(C) factor in isolation. *Kaechele* at paragraph one of the syllabus. Rather, the court must consider all of the statutory factors with the goal of reaching an equitable result because a spousal support award cannot be determined by resorting to a mathematical formula. *Pearson v. Pearson*, 6th Dist. Wood No. WD-21-066, 2022-Ohio-642, ¶ 12, citing *Kaechele* at 96.

{¶ 31} With this framework in mind, we turn to Gina's assignments of error.

**2. The trial court considered Gina's contribution to Benjamin's residency training.**

{¶ 32} In her fourth assignment of error, Gina contends that the trial court abused its discretion under R.C. 3105.18(C)(1) by not considering the contributions she made to Benjamin during his surgical residencies. Benjamin responds that the trial court correctly concluded that Gina did not contribute to him completing his residency training.

{¶ 33} We find that the trial court acted within its discretion when it determined under R.C. 3105.18(C)(1)(j) that "[t]here was no evidence that Gina's earnings * * * subsidized Benjamin's training to become an orthopedic surgeon." Courts generally require more evidence of support than simply paying bills while the other spouse pursues education or training. *See, e.g., Budd v. Budd*, 9th Dist. Summit No. 25469, 2011-Ohio-565 (husband contributed to wife's education by helping with childcare, paying her tuition and book fees, and transporting her to and from classes); *Addington v. Addington*, 4th Dist. Scioto No. 04CA2951, 2004-Ohio-6931 (parties sold their business and home and moved so that husband could go to medical school, and wife was sole wage-earner while husband was in school); *and compare, e.g., Nieman v. Nieman*, 3d Dist. Allen No. 1-16-22, 2016-Ohio-7169 (affirming trial court's finding that neither spouse contributed to the other's education because both had finished school and husband was preparing to start his residency when they married); *Murphy v. Murphy*, 2d Dist. Montgomery No. 15693, 1996 WL 629522, *4 (Nov. 1, 1996) (Although husband attended medical school and received his medical degree during the marriage, there was no evidence in the record

20.

that "one spouse has forgone educational or employment opportunities in order to provide financial support to the other spouse * * *.").

{¶ 34} Gina testified that she and Benjamin married after Benjamin finished medical school, while he was in his first residency. Gina had bachelor's and master's degrees and was a licensed social worker when they married. Although Gina worked full-time and "[p]aid bills" during the seven years that Benjamin was completing his surgical residencies, she specifically said that she "didn't pay for [Benjamin's] education, [she] just paid the bills." There was no other testimony regarding Gina's contribution to Benjamin's education and training, and Gina did not claim that Benjamin's residencies were unpaid or that he made no contributions to the household during that time. Further, rather than failing to consider any contribution that Gina made to Benjamin's training and education, the trial court concluded (based on the scant testimony that Gina gave on the issue) that Gina failed to show that her employment and income for the first seven years of the parties' marriage led to Benjamin becoming an orthopedic surgeon. It was not unreasonable, arbitrary, or unconscionable for the trial court to do so. Therefore, Gina's fourth assignment of error is not well-taken.

**3. The trial court's spousal support award was reasonable and appropriate.**

{¶ 35} In her fifth, sixth, seventh, eighth, and ninth assignments of error, Gina argues that the trial court abused its discretion by (1) only awarding her $13,000 per month in support, (2) reducing her monthly support award over time, (3) not requiring Benjamin to pay for her insurance, (4) not ordering Benjamin to pay support through

21.

bank withholding, and (5) making a clerical error in the support schedule included in the final divorce decree.

{¶ 36} Benjamin responds that (1) the trial court considered all of the factors in R.C. 3105.18(C)(1) in fashioning the support order, and it acted within its discretion in doing so; (2) Gina never asked for Benjamin to be responsible for her insurance after the divorce, and the support award should be sufficient to allow Gina to obtain her own insurance; (3) the trial court had the discretion to allow Benjamin to make support payments directly to Gina; and (4) Gina should have sought to have the clerical error modified by the trial court under Civ.R. 60(A) rather than assigning it as error on appeal.

**a. The amount of the spousal support award is reasonable and appropriate.**

{¶ 37} In her seventh assignment of error, Gina argues that the trial court acted unreasonably when it awarded her only $13,000 per month in spousal support—far short of the $33,000 per month that she requested. She contends that she presented the trial court with "extensive and persuasive Documentation of [her] Monthly Expenses" that justified a spousal support award of $33,000 per month, and argues $13,000 per month is inadequate "[c]onsidering the Standard of Living of the parties, and the Abandonment of [Gina] by [Benjamin] * * *." Benjamin responds that the trial court "specifically evaluated each and every factor under R.C. 3105.18(C)(1) in making the spousal support award, [and] provid[ed] ample reasoning and explanation of the specifics of each factor in this case[,]" which, he contends, shows that the trial court's spousal support award was not erroneous or unreasonable.

22.

{¶ 38} When an appellate court reviews a trial court's spousal support award, it is important to remember that "[a] trial court must not base its determination [under R.C. 3105.18(C)] upon any one factor taken in isolation.  * * * '[A]ll of the statutory factors must be considered, with the goal of reaching an equitable result.'"  (Second brackets sic.)  *Galloway v. Galloway*, 6th Dist. Erie No. E-21-043, 2023-Ohio-29, ¶ 51, quoting *Pearson*, 6th Dist. Wood No. WD-21-066, 2022-Ohio-642, at ¶ 12; and citing *Organ v. Organ*, 2014-Ohio-3474, 17 N.E.3d 1192, ¶ 15 (9th Dist.); *Kaechele,* 35 Ohio St.3d 93, 518 N.E.2d 1197, at paragraph one of the syllabus; and *King*, 6th Dist. Erie No. E-17-072, 2019-Ohio-1561, at ¶ 8-9.

{¶ 39} Gina's argument on appeal relies solely on the parties' standard of living during the marriage.[4]  However, neither party is guaranteed the same standard of living post-divorce, and the trial court is not required to apply an equal standard of living to the parties; all that the trial court is required to do is consider all of the factors in R.C. 3105.18(C)(1) and fashion an award that is appropriate and reasonable.  *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, 870 N.E.2d 168, ¶ 76-77 (10th Dist.).

{¶ 40} In its decision, the trial court made the following findings relative to the factors in R.C. 3105.18(C)(1):

---

[4] Although Gina also refers to Benjamin's "abandonment" of her, the trial court expressly determined that spousal support's "purpose is not to punish a spouse[,]" and that "Benjamin's infidelity * * * was not a relevant and equitable factor to be considered" under the "[a]ny other factor" provision of R.C. 3105.18(C)(1)(n).  This finding was not an abuse of the trial court's discretion.

23.

- *(C)(1)(a) – The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed pursuant to the divorce.*

  The trial court determined that Gina would have $430,000 in income from the division of marital property and would be "relatively debt free." Benjamin would have his salary from the surgical practice and income from the rental property, which was a gross amount of approximately $874,000 in 2021. The court said that it would "primarily consider Benjamin's earnings ability as an orthopedic surgeon" for spousal support purposes. Benjamin planned to incur around $500,000 in unsecured debt to fulfill his settlement agreement with Gina. The parties agreed that their income from the marital property was equal.

- *(C)(1)(b) – The relative earning abilities of the parties.*

  The court found that Benjamin, an orthopedic surgeon, had gross income that averaged nearly $800,000 over the three years before the divorce trial, but that his "take home pay" from his surgical practice was closer to $490,000. Benjamin's contract with his current employer was set to expire in April 2022, but would automatically extend for 1-year terms unless either party terminated it. Benjamin's employer was affiliated with St. Luke's Hospital, which had recently been acquired by a new owner, but any impact that might have on Benjamin's income was "purely speculative."

24.

The court also found that Gina has two master's degrees and can get her Ph.D. in social work from the University of Michigan after four years of study. She worked full-time in the social work field from 1990 to 1997, but had not worked in the last 25 years. Neither party presented evidence regarding the potential earnings of someone with either a master's degree or a Ph.D. in social work.

- *(C)(1)(c) – The ages and the physical, mental, and emotional conditions of the parties.*

  Both parties were born in 1963. There was no evidence regarding Gina's physical health, but she had suffered anxiety and depression when she and Benjamin separated. Her mental health was improving. There was no evidence regarding Benjamin's physical or mental health.

- *(C)(1)(d) – The retirement benefits of the parties.*

  Each party would have approximately $500,000 in a retirement fund.

- *(C)(1)(e) – The duration of the marriage.*

  The parties had been married for over 31 years at the time of the trial.

- *(C)(1)(f) – The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home.*

  This factor is inapplicable.

- *(C)(1)(g) – The standard of living of the parties established during the marriage.*

   The trial court described the parties' standard of living as "extravagant." They lived in a large home in Perrysburg, and recently sold their second home in Florida for $875,000. Both parties had several cars, including Porches. Gina testified that their monthly expenses exceeded $33,000.

- *(C)(1)(h) – The relative extent of education of the parties.*

   The court reiterated that Gina has two master's degrees, and Benjamin has a medical degree and is an orthopedic surgeon.

- *(C)(1)(i) – The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties.*

   The court found that the parties divided their marital assets equitably, and neither party had any separate property.

- *(C)(1)(j) – The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party.*

   Gina and Benjamin married after Benjamin finished medical school. Although Gina worked full-time for the first seven years of their marriage, the court found that "[t]here was no evidence that Gina's earnings from 1990 to 1997 subsidized Benjamin's training to become an orthopedic surgeon."

- *(C)(1)(k) – The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought.*

   The court reiterated that Gina has two master's degrees, and had testified that she could obtain her Ph.D. from the University of Michigan in four years.

- *(C)(1)(l) – The tax consequences, for each party, of an award of spousal support.*

   The parties did not present evidence on this factor.

- *(C)(1)(m) – The lost income production capacity of either party that resulted from that party's marital responsibilities.*

   Gina left the workforce in 1997 when the parties' youngest child was born, and had not returned to work after the children were emancipated.

- *(C)(1)(n) – Any other factor that the court expressly finds to be relevant and equitable.*

   Although Gina sought to have Benjamin's "infidelity" recognized under this subsection, the court "found that was not a relevant and equitable factor to be considered."

{¶ 41} As demonstrated by the trial court's spousal support decision, the court took into account the parties' "extravagant standard of living" during the marriage—

27.

along with every other factor in R.C. 3105.18(C)(1)—which is all that it was required to do. The trial court also had before it the temporary support order, in which the magistrate found—based on Gina's testimony—that Gina and Benjamin had been living above their means while they were married. And the court took into account the parties' incomes, earning potential, relative financial positions following the division of marital property, health, ages, and Gina's need and desire for further education. In light of these facts, and when all of the facts and factors are considered together, there is no evidence that the trial court acted unreasonably, arbitrarily, or unconscionably in setting the amount of spousal support. Accordingly, Gina's seventh assignment of error is not well-taken.

### b. The trial court properly reduced Gina's spousal support over time.

{¶ 42} In her sixth assignment of error, Gina argues that the trial court abused its discretion by reducing the amount of spousal support over time. She contends that it was unreasonable for the trial court to reduce the spousal support award because the award does not cover her monthly expenses, it is "questionable" that she can retrain for gainful employment "[a]t her age," retraining would be expensive, and there is no guarantee that she could find "employment or significant pay, after being out of the workforce for 25 years * * *." Benjamin again argues that the trial court considered all of the statutory factors in fashioning the spousal support award, so its decision to reduce the award over time was not an abuse of discretion.

{¶ 43} The crux of Gina's argument under this assignment of error is that the trial court did not give her enough spousal support to meet her needs, and further reducing that

28.

amount is unreasonable. But a spousal support award is not based on need; it is based on what is reasonable and appropriate in light of the factors in R.C. 3105.18(C)(1). *Basista v. Basista*, 6th Dist. Wood No. WD-14-076, 2016-Ohio-146, ¶ 28, citing *Organ,* 2014-Ohio-3474, 17 N.E.3d 1192, at ¶ 14; and *Heslep v. Heslep,* 7th Dist. Monroe No. 825, 2000 WL 818909, *4 (June 14, 2000). And the trial court explained that it was awarding Gina $13,000 per month for the first four years to give her time to earn her Ph.D., after which she "will have the ability to earn income." Then, Gina will receive $10,000 per month for ten years, at which time Benjamin will be 72 years old and "could reasonably reduce his workload or retire." From that point on, Gina will receive $6,000 per month indefinitely. The court also retained jurisdiction to modify the amount and duration of the spousal support award, so either party can seek to change the amount of the award if their circumstances change.

{¶ 44} The trial court's broad discretion over spousal support awards encompasses the ability to craft an award that changes over time based on the anticipated financial situations of the parties. *Arthur v. Arthur*, 130 Ohio App.3d 398, 409-410, 720 N.E.2d 176 (5th Dist.1998). The trial court's explanation for structuring the support the way it did shows that the court considered the parties' anticipated financial situations over the coming years and structured a reasonable and appropriate award for those anticipated circumstances. The court also retained jurisdiction over spousal support so that either party can seek a modification, if necessary. This was not unreasonable, arbitrary, or unconscionable. Gina's sixth assignment of error is not well-taken.

29.

### c. The trial court did not abuse its discretion by failing to order Benjamin to pay Gina's insurance premiums.

{¶ 45} In her fifth assignment of error, Gina argues (without citing any law) that she testified to the cost of her health insurance and "[c]onsidering [Benjamin] has an Annual Gross Income in excess of $900,000, it is unreasonable, and an Error for the Court not to require him to pay for [Gina's] Health, Dental, and Optical Insurance." Benjamin responds that Gina did not ask the court to order Benjamin to pay for her insurance, the spousal support award should cover the costs of her insurance, and because the final decree does not address insurance, there is a presumption that each party is responsible for their own insurance costs after a divorce.

{¶ 46} Although a person who carries health insurance that covers their spouse is prohibited from terminating the spouse's health insurance coverage while a divorce is pending, R.C. 3105.71(A), nothing in the statute requires the person to maintain the spouse's coverage after the divorce is finalized. Whether to require someone to maintain health insurance for their spouse after the divorce is "firmly within the discretionary power of the domestic relations court." *Roskwitalski v. Roskwitalski*, 5th Dist. Licking No. 94 CA 103, 1995 WL 498124, *3 (Aug. 10, 1995). "Once the court grants a divorce, we must assume in the absence of intent to the contrary, that each party becomes responsible for carrying their own health insurance, because the divorce decree essentially permits the parties to go their own way, with all the concomitant responsibilities that attach to those who are no longer married." *Ianiro v. Pastis*, 8th Dist.

30.

Cuyahoga No. 83368, 2004-Ohio-2987, ¶ 26. In other words, unless the divorce decree specifically orders one party to carry the other's insurance, the parties are each responsible for their own insurance after they are divorced.

{¶ 47} In this case, the trial court had before it Gina's monthly expenses for health insurance premiums, and we presume that the court considered those premiums along with the rest of Gina's living expenses when it determined how much spousal support to award. Thus, we also presume that the court intended for Gina to pay for her insurance out of the spousal support award. The closest Gina came to asking the court to order Benjamin to pay for her insurance was when she said on direct that "I think that he should have to give me support for life including health insurance * * *." But Gina's attorney never asked the court in any filings or during the trial to order that Benjamin pay for Gina's insurance, and the parties did not include insurance payments in their settlement agreement. Under these circumstances, we do not believe that the trial court abused its discretion by failing to order Benjamin to pay for Gina's health insurance. Gina's fifth assignment of error is not well-taken.

**d. The court properly allowed Benjamin to make direct support payments.**

{¶ 48} In her ninth assignment of error, Gina argues that the trial court should have ordered Benjamin to make his support payments through bank withholding because Benjamin violated the temporary support order and owes arrearages under the temporary order, and the court "did not resolve the issue of non-compliance by [Benjamin] with the Temporary Support Order." Benjamin responds that the trial court was permitted to order

31.

direct payments, and Benjamin was never found in contempt of any court orders, so the trial court did not abuse its discretion by ordering direct payments.

{¶ 49} Direct payments of support are authorized by R.C. 3121.441(A), which provides:

> Notwithstanding the provisions * * * of the Revised Code providing for the office of child support in the department of job and family services to collect, withhold, or deduct spousal support, when a court * * * issues or modifies an order requiring an obligor to pay spousal support * * *, the court may permit the obligor to make the spousal support payments directly to the obligee instead of to the office if the obligee and the obligor have no minor children born as a result of their marriage and the obligee has not assigned the spousal support amounts to the department * * *.

Whether to permit an obligor to make direct spousal support payments "is clearly discretionary." *Dingey v. Dingey*, 5th Dist. Muskingum No. CT2020-0006, 2020-Ohio-5340, ¶ 38; *Allen v. Allen*, 2022-Ohio-3198, 196 N.E.3d 368, ¶ 84 (11th Dist.). And there is no requirement that the court "conduct an analysis of an obligor's possible failure to comply with a direct payment order" before deciding whether to allow direct payments. *Dingey* at ¶ 38.

{¶ 50} Gina's only argument under this assignment of error is that Benjamin failed to comply with the temporary order and still owes arrearages under the temporary order. As we have already discussed, any issues that Gina had with the temporary orders are

32.

now moot because they were not separately reduced to judgment or preserved in the final decree. *Row*, 6th Dist. Lucas No. L-21-1231, 2022-Ohio-2525, at ¶ 54. And nothing in the record indicates that the trial court acted unreasonably, arbitrarily, or unconscionably by allowing Benjamin to make direct support payments. Therefore, Gina's ninth assignment of error is not well-taken.

### e. The trial court made a clerical error in the spousal support schedule.

{¶ 51} In her final assignment of error related to spousal support, Gina argues that the trial court made an error in the support schedule it included in the final divorce decree. She contends that the trial court has the year when her support award reduces to $6,000 per month wrong; the court listed 2032 as the date of the change, which is ten years after the support order went into effect, not 14 years later, as the court ordered earlier in its decision. Benjamin argues that Gina should have filed a motion to correct the error in the trial court, but because she did not, we should overrule this assignment of error.

{¶ 52} Although a trial court has the authority under Civ.R. 60(A) to correct a clerical mistake—i.e., "a mistake or omission, mechanical in nature and apparent on the record which does not involve a legal decision or judgment[,]" *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100, 671 N.E.2d 236 (1996)—this is not the exclusive remedy for clerical errors. Nothing in Civ.R. 60(A) deprives an appellate court of its ability to "[r]eview and affirm, modify, or reverse the judgment or final order appealed[.]" App.R. 12(A)(1)(a). In fact, "App.R. 12(A)(1)(a) and 12(B) empower this

33.

court to modify judgments as a matter of law." *Nastasi v. Nastasi*, 11th Dist. Trumbull No. 94-T-5023, 1994 WL 721611, *1 (Dec. 16, 1994). On that basis, we find Benjamin's argument that Gina missed her opportunity to correct the clerical error in the final decree unavailing.

{¶ 53} Turning to the error in the decree, we agree with Gina that the trial court erred when it entered the date on which Gina's spousal support decreases to $6,000. In its decision following the divorce hearing, the trial court clearly stated in its analysis that it had decided to award Gina $13,000 per month for four years, followed by $10,000 per month for ten years, and that the final reduction to $6,000 per month was to happen after 14 years, when Benjamin is 72 years old. However, in its orders, the court wrote:

> IT IS ORDERED that on May 1, 2022 and on the first day of each month for the following 48 months defendant Benjamin Salpietro shall pay to plaintiff Gina Salpietro $13,000 as spousal support; that on May 1, 2026 and on the first day of each month for the following 120 months defendant Benjamin Salpietro shall pay to plaintiff Gina Salpietro $10,000 as spousal support; and that on *May 1, 2032* and on the first day every ensuing month thereafter defendant Benjamin Salpietro shall pay to plaintiff Gina Salpietro $6,000 as spousal support.

(Emphasis added.) Rather than reducing the support order to $6,000 after 14 years, the court's order reduced the award to $6,000 after only 10 years. The error was carried over into the final divorce decree.

34.

{¶ 54} It is clear from the record that the trial court intended for Gina to receive spousal support of no less than $10,000 for 14 years—i.e., until May 1, *2036*. Because the court's spousal support decision and final divorce decree contain a typographical error, we hereby modify the spousal support award in the final decree to reflect the trial court's decision. The spousal support order in the final decree, as modified by this decision, should read:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that pursuant to Judge Kelsey's decision that on May 1, 2022**,** and on the first day of each month for the following 48 months**,** Husband shall pay to Wife $13,000.00 as spousal support; that on May l, 2026**,** and on the first day of each month for the following 120 months**,** Husband shall pay to Wife $10,000.00 as spousal support; and that on May 1, **2036,** and on the first day **of** every ensuing month thereafter**,** Husband shall pay to Wife $6**,**000.00 as spousal support.

(Modifications bolded and underlined.)

{¶ 55} Gina's eighth assignment of error is well-taken.

### 4. The trial court's fee award was fair and equitable.

{¶ 56} In her tenth and final assignment of error, Gina argues that the trial court's attorney fees award was inadequate because the court only awarded her $35,000, rather than the $65,000 that she requested. She claims that the award was unreasonable because she "has not worked in 25 years and is in complete economic reliance upon [Benjamin's]

35.

income." She also contends that her attorney's bill "shows the major amount of work necessary to prepare this case for Trial, and the lengthy Exhibits, including assembling all of the expenses of the parties to establish their Standard of Living." Benjamin responds that the trial court considered all of the statutory factors related to an attorney fee award, and the award was appropriate in light of Gina's and her attorney's litigation tactics that added delay and expense to the proceedings.

{¶ 57} In divorce cases, an award of attorney fees is controlled by R.C. 3105.73(A). Under the statue, the trial court "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." Before awarding fees, the trial court may consider (1) the parties' marital assets and income, (2) any temporary spousal support ordered, (3) the parties' conduct, and (4) "any other relevant factors the court deems appropriate." *Id.* "An award of attorney fees must be fair, equitable, and serve the ends of justice." *Steinle v. Steinle*, 2018-Ohio-3985, 120 N.E.3d 478, ¶ 41 (6th Dist.), citing *Garritano v. Pacella*, 6th Dist. Lucas No. L-07-1171, 2009-Ohio-2928, ¶ 101; and *Bowen*, 132 Ohio App.3d at 642, 725 N.E.2d 1165. We review a trial court's award of fees for an abuse of discretion. *Row*, 6th Dist. Lucas No. L-21-1231, 2022-Ohio-2525, at ¶ 58, citing *Kim v. Kim*, 2020-Ohio-22, 150 N.E.3d 1229, ¶ 47 (9th Dist.).

{¶ 58} In determining the issue of attorney fees, the trial court explicitly considered the factors in R.C. 3105.73(A). The court noted:

36.

that Gina unnecessarily added [Benjamin's businesses] as third party defendants; that she objected unnecessarily to the court's standard temporary restraining order; that she sought, without much basis in law, to have many of Benjamin's expenditures characterized as financial misconduct, R.C. 3105.171(E)(4); and that she sought, without much basis in law, to argue that Benjamin should be punished through additional spousal support awards for his "adulterous" conduct prior to the divorce.

The court also noted that Benjamin had already been ordered to pay $10,000 of Gina's legal fees. Based on this information, the trial court ordered Benjamin to pay an additional $25,000 of Gina's legal fees, for a total of $35,000.

{¶ 59} Our review of the record shows that the trial court did not abuse its discretion in awarding attorney fees. The court considered the statutory factors and recognized that Gina and her attorney were responsible for some of the fees because they "unnecessarily" added parties and filed objections and pursued dubious legal strategies that were "without much basis in law * * *." Gina's trial testimony also revealed that she had paid her attorney approximately $60,000 by the time of trial, some of which was paid out of marital funds that the court's temporary support order earmarked for other joint expenses. *See Baum v. Perry-Baum*, 6th Dist. Wood No. WD-18-085, 2019-Ohio-3923, ¶ 31-32 (finding that the trial court did not abuse its discretion in awarding attorney fees to wife when, among other things, wife was responsible for some of the delay in the case and paid her attorneys from marital funds).

37.

{¶ 60} Because the trial court's fee award was fair and equitable, and the court did not abuse its discretion in arriving at the award, we find that Gina's tenth assignment of error is not well-taken.

### III. Conclusion

{¶ 61} Because the trial court properly signed the proposed judgment entry and did not abuse its discretion in awarding spousal support or attorney fees, the April 5, 2022 judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed with the modification of "May 1, 2032" to "May 1, 2036" in the spousal support schedule. Gina is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowsi, J.          _____
                                                          JUDGE
Thomas J. Osowik, J.

                                 _____
Christine E. Mayle, J.                             JUDGE
CONCUR.

                                 _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

38.