OPINION
{¶ 1} Plaintiff-appellant Marlana Bachtel appeals from the final decree of divorce entered by the Mahoning County Common Pleas Court, Domestic Relations Division. Her five appellate arguments generally revolve around the issue of spousal support, which she contends should be $1,600 per month indefinitely rather than $1,250 per month for seven years. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} Marlana and Michael Bachtel were married on April 20, 1979. The initiating divorce complaint in this case was filed by Ms. Bachtel in December 2001. The court found the duration of the marriage to be twenty-one years based upon an earlier date of separation. At a pretrial, the parties agreed to sell the marital residence and divide certain personal property. Just before trial, the parties entered a settlement on the record concerning all property. This property division mainly entailed the equal distribution of the $32,000 in proceeds from the sale of the marital residence and Mr. Bachtel's $45,000 401k. The debts were also divided in this settlement. Such settlement left spousal support as the remaining issue for trial. (Tr.2-17).
 {¶ 3} The trial began on November 20, 2002. At trial, Ms. Bachtel asked for $1,600 per month in spousal support for an indefinite duration; however, her post-trial brief asked for $1,700 per month. Mr. Bachtel urged spousal support in the monthly amount of $1,187.50 for six years. Testimony established that Mr. Bachtel was fifty years old and made $60,000 per year and that Ms. Bachtel was forty-four years old and made over $18,000 per year working part-time delivering mail for the post office. It was also established that Ms. Bachtel attended Youngstown State University full-time where she had completed two years towards a degree and that she had previously completed a massotherapy program.
 {¶ 4} On February 14, 2003, the trial court entered its decree of divorce, ordering Mr. Bachtel to pay $1,250 per month for seven years except that the award shall terminate upon the death of either party or upon Ms. Bachtel's remarriage or cohabitation with an unrelated male. The court retained jurisdiction to modify the amount of support.
 {¶ 5} On February 28, 2003, Ms. Bachtel filed a timely motion for a new trial on the grounds of newly discovered evidence in that she had just been diagnosed with a torn rotator cuff and a neck problem and was allegedly unable to return to her job. On April 15, 2003, the trial court denied the motion, finding that a condition occurring after trial or a diagnosis made after trial is not the type of newly discovered evidence contemplated by Civ.R. 59(A)(8).
 {¶ 6} Ms. Bachtel [hereinafter appellant] timely filed a notice of appeal on April 30, 2003. See App.R. 4(B)(2) (timely motion for new trial tolls time for appeal). She initially failed to attach the original divorce decree to her notice of appeal and only attached the denial of her motion for new trial; however, we subsequently permitted her to amend the notice of appeal to demonstrate that it was an appeal from both judgment entries.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 7} Ms. Bachtel sets forth five assignments of error, the first of which provides:
 {¶ 8} "The court erred as a matter of law in failing to place values on each of the items of property divided by the parties herein, thereby permitting this reviewing court to make an independent analysis of the fairness of the award below."
 {¶ 9} Appellant argues in three seemingly unrelated sentences that the trial court abused its discretion by failing to place values on the property that was divided between the parties. In one sentence, she reviews the starting point for the equitable division of marital property, and in the next sentence, she cites the statute for determining whether spousal support is reasonable and appropriate. Part of her confusion may be due to her quote from Cherry v. Cherry (1981), 66 Ohio St.2d 348, which was decided before the legislature separated the division of marital property and the award of spousal support into different statutes with their own respective factors.
 {¶ 10} The factors for dividing marital property are contained in R.C. 3105.171 (F)(1) through (9). Among them is the requirement that the trial court shall make written findings of fact that support the determination that the marital property has been equitably divided. R.C. 3105.171(G). This section implicitly requires valuation of the assets in order to start with an equal division of property and allows deviation from that equal division if such would be inequitable. See R.C. 3105.171(C)(1). However, the only issue before the trial court in this case was spousal support.
 {¶ 11} In fact, appellant explicitly waived the court's dutyto value the property. More specifically, appellant expressly agreed that she was satisfied with the division of each asset, that she thought the division was fair, that she waived the duty to value each asset, and that she was satisfied with the debt allocation. (Tr. 12-14). She then signed the settlement agreement. Two trial court judgment entries memorialized this waiver. See December 11, 2002 and February 14, 2003 Judgment Entries. As such, she cannot now contest valuation for purposes of the division of marital property. See Goode v. Goode (1991),70 Ohio App.3d 125, 132; Gottlieb v. Gottlieb (Mar. 19, 1991), 10th Dist. No. 90AP-1131 (stating that where the property is distributed pursuant to the parties' prior agreement, specific valuation is not essential).
 {¶ 12} In awarding spousal support, the trial court is instructed to consider the factors listed in R.C. 3105.18(C)(1). One such factor is the relative assets and liabilities of the parties. R.C. 3105.18(C)(1)(i). In considering this factor, the trial court found that the parties' only "real" assets were the $32,000 in escrow from the sale of the marital residence and Mr. Bachtel's retirement benefits of approximately $45,000. The court also reviewed various portions of the $52,496 in debt and incorporated an exhibit evidencing same.
 {¶ 13} The trial court did not abuse its discretion in determining that the equity from the house and the 401k are the parties' only "real" assets, i.e. the only assets of substance that could assist in the determination of the amount and duration of spousal support. The court is not required to place values on each item of personal property (that was split pursuant to a settlement where valuation was waived) in order to establish the reasonableness and appropriateness of spousal support where the court places values on the two largest assets, characterized as the only "real" assets and where the court valued the debt. As such, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 14} Appellant's second assignment of error contends:
 {¶ 15} "The court erred to the prejudice of plaintiff in failing to rule her entitlement to `indefinite' spousal support where she had relied to her detriment on the stated position of the court."
 {¶ 16} Appellant contends that she entered into the settlement for the division of marital property in reliance on the trial court's suggestion that she would get indefinite spousal support due to the long duration of the marriage. She cites the judgment entry, which states, "the Court alluded to long term marriages generally being awarded spousal support for an indefinite duration." The court went on to explain why appellant is not entitled to an award of indefinite duration. Appellant complains that the court did more than allude to an award of indefinite duration; she directs our attention to pages 17 through 18 of the transcript.
 {¶ 17} We note that neither this assignment of error nor the arguments within it contend that the court erred in making spousal support definite because of the general facts and circumstances existing herein. In fact, no law on the subject is cited. Rather, appellant merely argues that the court erred in making spousal support definite because she relied on the court's position regarding long-term marriages.
 {¶ 18} Appellant points to various concessions she made in the settlement and alleges that she would not have made so many concessions without relying on some underlying reason, such as the court's implication that support would be indefinite. However, she fails to detail the allegations that she ran up tens of thousands of dollars in credit card debt mainly through cash advances during a previous separation, even though she was working and appellee was voluntarily paying her nearly $800 per month. The house had to be refinanced to pay down this debt. She also fails to mention that much of the debt was for her student loans or alleged personal loans from her brother and mother incurred when she was separated.
 {¶ 19} Regardless, as appellee counters, detrimental reliance is not supported by the chain of events as represented by the transcript. Specifically, the settlement of the property division was placed into the record and signed before any mention of spousal support was made. (Tr. 2-18). In trying to urge the parties to settle the spousal support issue, the court agreed that they should start by making the award indefinite, taxable to appellant and deductible to appellee. (Tr. 17-18). The court was merely trying to help settle the issue. In any event, the property division was already settled before any statements on the record were made that could have led appellant to believe that the award would be indefinite.
 {¶ 20} In appellant's reply brief, appellant's counsel (who we note is not only appellant's mother, but who also has a claim to a loan, which was included in the debts in the property settlement) claims that she has heard the trial judge hold numerous times that marriages of long duration should result in indefinite spousal support awards. This attorney's claim is irrelevant as it is not specific to this case. Moreover, she was not appellant's trial counsel. One cannot argue that because it is common knowledge that a judge usually rules a certain way, the party could rely on this trend when entering a settlement with the opposing party. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 21} Appellant's third assignment of error alleges:
 {¶ 22} "The court committed reversible error where plaintiff was required to present expert testimony as to her numerous health problems."
 {¶ 23} Appellant testified that at the time of trial, she made over $18,000 per year working part-time for the post office delivering mail. She worked six days per week for a total of twenty-three hours. However, she claimed that she never felt she could work full-time due to her health problems. She stated this after testifying to the following conditions: migraines, hypothyroidism, acid reflux, tendonitis in her elbow, carpal tunnel, sensitive skin, asthma, anxiety, and depression.
 {¶ 24} In setting forth its analysis regarding the duration of spousal support, the trial court stated in part that it did not find appellant's testimony that she cannot work full-time to be credible. The court noted that appellant offered no expert testimony from a medical doctor to bolster her claim that she cannot work full-time or that any of her alleged medical conditions affect her ability to work. The court stated that had she introduced such evidence, then it may have found her claim to be more credible.
 {¶ 25} Appellant cites Gullia v. Gullia (1994),93 Ohio App.3d 653 in support of her argument that it is not necessary to present medical testimony to substantiate her medical problems. In Gullia, the trial court found the party's testimony on their own condition to be credible, and the appellate court stated that the trial court did not err in accepting the testimony as true even without an expert.
 {¶ 26} Appellant is correct in stating that medical testimony is not strictly necessary as a matter of law to prove one's medical conditions. However, although medical testimony is not per se required, the trial court can believe a party's testimony on its face or can disbelieve such testimony as self-serving.Gullia merely establishes the trial court's latitude to make these credibility evaluations.
 {¶ 27} At the time of the testimony, appellant was established in a job working twenty-three hours in six days, she was attending Youngstown State University full-time, and she had been attending college for at least the past two years. Such did not help to make her case for being unable to work full-time at some job at some point. One could interpret her testimony as rattling off every ailment she could think of that inconveniences her in order to claim that she could not work full-time.
 {¶ 28} Contrary to appellant's argument, the list she made of her medications and entered as an exhibit need not be taken as the ultimate truth. Also, a note from a doctor evidencing her sick leave, where she testified that she was on temporary sick leave due to depression from the divorce, does not establish that she cannot work full-time. In fact, she admitted she would probably be going back to work the next week. Even if she had all these medical conditions, this does not mean that she could not work full-time in some field, especially after she finishes her four-year college degree.
 {¶ 29} It is well-established that credibility determinations and decisions regarding the weight of the evidence are primarily the province of the fact-finder. Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80. This is partly because the fact-finder is in the best position to interpret the witness's voice inflections, gestures, and demeanor. Id. The court could properly find that appellant's testimony lacks credibility.
 {¶ 30} The trial court was not stating that no one can ever claim an inability to work full-time without expert testimony. Instead, the court basically noted that if appellant presented an expert, then the court may have laid to rest some of its fears that appellant was exaggerating in order to collect more spousal support. The trial court did not err in recapping that no medical evidence was presented, and the trial court's decision in this case is not against the weight of the evidence. In accordance, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 31} Appellant's fourth assignment of error provides:
 {¶ 32} "The court erred in failing to recognize that plaintiff presented evidence that the parties intended that the spousal support would place them on equal footing income-wise, and defendant failed to rebut such testimony."
 {¶ 33} Appellant claims that the court was required to equalize their incomes, by awarding her $1,600 per month, because appellee failed to rebut the following testimony that she presented:
 {¶ 34} "A. I'm requesting that I have an equal standard of living for Michael?
 {¶ 35} "Q. And why's that?
 {¶ 36} "A. Because Michael and I had come to a verbal agreement a year ago that we — he agreed to equalize his salary to mine." (Tr. 38).
 {¶ 37} Appellant cites Pawlowski v. Pawlowski (1992),83 Ohio App.3d 794, in support of her argument that her testimony on the agreement must be taken as true because he failed to counter it. However, Pawloski is distinguishable. First, the issue in that case was the enforceability of an oral settlement agreement. Id. 797. Here, as appellee notes, the alleged agreement appears to have been entered before the divorce was even filed. Second, the husband in that case failed to file an answer. Id. at 800. Here, we just have a lack of specific testimony rebutting her claim.
 {¶ 38} There were no arguments presented surrounding an agreement at trial or in the post-trial brief. Prior to trial, appellant agreed that the only issue upon which settlement was not reached was spousal support. When the court was encouraging them to settle the issue of spousal support, she did not contend that appellant was backing out of a prior agreement on support.
 {¶ 39} There is also no allusion to consideration to support any agreement. Further, even under appellant's version of the "agreement," the terms are vague and general; the number $1,600 per month is not involved. All she presents is one sentence in a two-hundred-page transcript.
 {¶ 40} In any case, the trial court could find appellant's testimony to lack credibility, even if appellee did not expressly rebut every single aspect of it. Appellant's argument is without merit, and this assignment of error is overruled.
 {¶ 41} We note that this assignment does not argue that the court generally failed to consider the standard of living established during marriage, which is a factor set forth in R.C.3105.18(C)(1)(g). We also note that equalization of income is not a factor that must be considered or a goal in divorce cases.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 42} Appellant's fifth assignment of error contends:
 {¶ 43} "The court erred as a matter of law in failing to grant plaintiff's request for a new trial."
 {¶ 44} Review of some relevant dates is necessary here. The trial took place November 20 through 22, 2002. Appellant filed a motion for a new trial on February 28, 2003. She claimed newly discovered evidence in the form of a February 5, 2003 diagnosis of a torn rotator cuff and a February 25, 2003 diagnosis that an MRI showed a disc problem in her neck.
 {¶ 45} As the trial court noted, if appellant is trying to say that these problems existed before trial, then the evidence does not meet the test for recognizing newly discovered evidence because it could have been discovered before trial with reasonable diligence. Civ.R. 59(A)(8). In fact, her testimony that she can only work part-time due to certain conditions would seem to contradict her post-trial claim that she cannot work at all due to injuries such as a torn rotator cuff.
 {¶ 46} If she is trying to say that the conditions just happened, then her argument still fails. Just as the trial court held, newly discovered evidence for granting a new trial under Civ.R. 59(A)(8) cannot be evidence that did not even exist anywhere prior to trial. See Schwenk v. Schwenk (1982),2 Ohio App.3d 250 (reviewing the rationale behind such statement). See, also, Assad v. State Dept. of Liq. Contr. (1952), 70 Ohio Law Abs. 185; Hutt v. Young (1934), 47 Ohio App. 390. The test is "newly discovered," implying it existed at the time of trial, not "newly occurred." See State v. Price (June 11, 1999), 7th Dist. No. 92CA72, citing State v. Petro (1947), 148 Ohio St. 505, 506
(for the six criteria necessary for newly discovered evidence to require a new trial). New conditions will neither change the result of a past trial nor are they material to the issues at trial.
 {¶ 47} As the trial court advised her and as she subsequently did, the proper means for raising her new diagnoses is a motion to modify spousal support. However, this is not the appeal from the entry that resulted from her motion to modify support. Thus, we cannot address any of her suggestions with regards to such entry.
 {¶ 48} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, P.J., concurs.
Donofrio, J., concurs.