[Cite as *Norton v. Norton*, 2023-Ohio-2992.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Joseph P. Norton | Court of Appeals No. L-22-1255 |
| Appellant | Trial Court No. DR2020-0698 |
| v. | |
| Crystal L. Norton | **DECISION AND JUDGMENT** |
| Appellee | Decided: August 25, 2023 |

* * * * *

Stephen M. Szuch and Alex M. Savickas, for appellant.

Craig M. Witherell, for appellee.

* * * * *

**ZMUDA, J.**

## I.      Introduction

{¶ 1} Appellant, Husband Joseph Norton, appeals the October 4, 2022 judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, granting a monthly spousal support award to appellee, Wife Crystal Norton.[1]  For the following reasons, we affirm the trial court's judgment.

---

[1] To avoid confusion, we will address the parties as "Husband" and "Wife," respectively.

**A. Facts and Procedural Background**

{¶ 2} Husband filed his complaint for divorce from Wife on November 6, 2020. Wife filed her answer and counterclaim for divorce on January 12, 2021. Throughout 2021, the parties engaged in significant discovery regarding the value of marital assets. On May 22, 2022, the parties appeared for a pretrial hearing at which they indicated to the court that they had resolved all issues related to their division of assets other than allocation of the marital residence. The parties also informed the court that they had not agreed to an award of spousal support. The court set these unresolved issues for trial on August 17, 2022.

{¶ 3} At the August 9, 2022 final pretrial conference, the parties informed the trial court that all issues related to their property division, including the marital residence, had been settled. That settlement agreement was read into the record.[2] Relevant to Husband's argument on appeal, as part of the settlement he waived four years of premarital interest in the parties' residence and all premarital interest in his employer-provided pension plan. He also agreed to accept responsibility for the entirety of the parties' marital debt—approximately $14,000. In addition to the property division settlement, the parties also agreed that each would be responsible for maintaining their

---

[2] The parties did not provide a transcript of the August 9, 2022 pretrial conference for our review but the terms of the settlement were recorded in the trial court's October 4, 2022 judgment entry. Neither party disputes the terms of the settlement agreement.

own health insurance policy following the judgment entry granting their divorce.[3] In light of the settlement, the only issue remaining for trial was the award of spousal support.

{¶ 4} The parties proceeded to trial on that issue on August 17, 2022. In her opening statement, Wife requested the trial court grant her spousal support in the amount of $3,000. Husband did not dispute that spousal support should be awarded but requested that it be an amount between $1,000 and $1,600. The parties then proceeded with their presentation of evidence and testimony as summarized below:[4]

**Testimony of Crystal Norton**

{¶ 5} Wife testified that she was 49 years old at the time of trial. She and Husband had been married for 22 years. At the time of the trial, their children from previous relationships had reached the age of majority and were no longer relying on the parties' financial support. She described their lifestyle during their marriage as being able to do "pretty much anything we wanted to do" including vacations, attending

---

[3] We note that in addition to the $3,000 award of spousal support, the trial court also ordered Husband to pay two-thirds of Wife's post-divorce insurance premiums. As described below, Husband calculates the payment of that insurance premium as part of the total spousal support award but makes no argument on appeal that the order on insurance premiums exceeded the issues before the trial court in light of the parties' settlement agreement. Therefore, we limit our analysis of that payment as part of the total spousal support award, as argued by the parties.

[4] The parties' testimony is not summarized in the order in which it was presented. Testimony unrelated to resolving the assigned errors has been omitted.

3.

concerts, races, and movies, and casino trips. The parties' lifestyle was maintained through Husband's salary.[5]

{¶ 6} Wife is a high school graduate and is a licensed cosmetologist in both Michigan and Ohio. At the time of trial, Wife was not employed. She testified that she had undergone shoulder surgery to repair a torn rotator cuff the previous summer and was required to remain unemployed for the year-long recovery process. When she was released to return to work, she found it too painful to stand to perform the cosmetology services because she is in need of a double knee replacement. Additionally, she was unable to retain "98%" of her clients who went to other providers during her time off. As a result of her lack of clientele and inability to work consistently, she was unable to pay the monthly $320 rent on her booth at the salon.

{¶ 7} Wife then described her ongoing medical issues that she argued prevented her from working. In addition to the shoulder surgery, she had also recently undergone "carpel tunnel surgeries." She indicated that her physical therapy following the rotator cuff surgery was too painful to complete and that while the carpel tunnel surgeries were successful, they were intended for limited pain relief and did not resolve all issues with her wrists. She next testified that she suffers from fibromyalgia, which presents as a burning pain throughout her body, plantar fasciitis, chronic fatigue syndrome, sleep apnea, osteoarthritis, depression, anxiety, panic attacks, post-traumatic stress disorder,

---

[5] Husband subsequently testified that he was employed at Toledo Jeep at all times relevant to this action.

4.

and Stockholm syndrome.  These health issues were summarized into an exhibit that was ultimately admitted into evidence.

{¶ 8} In light of these health issues, Wife stated that she was unable to perform any work due to the pain and discomfort of simply remaining standing or in a seated position for an extended period of time.  She also does not anticipate being able to perform a data entry job, as suggested by Husband, due to her lack of computer skills.  She conceded that despite believing she is unable to work that she has not applied for any disability benefits that may be available to her.  She would, however, be willing to look into other job opportunities, if necessary, in the future.

{¶ 9} Prior to her shoulder surgery, Wife had worked eight to ten hours per week.  She attributed the limited work hours to her ongoing health conditions.  During her testimony, Wife introduced copies of the Schedule C documents from the parties' 2017, 2018, 2019, 2020, and 2021 joint income tax returns.  These schedules reflected business losses for Wife's work as a cosmetologist in all five reported years.

{¶ 10} Wife next described her monthly living expenses.  She testified that she would be paying $1,100 in monthly rent following the parties' divorce.  She also claimed the maintaining her own health insurance after the divorce would cost her $1,000 per month in premiums.  Additionally, Wife testified that her automobile insurance would be $60, her cell phone would be $130, internet services would be $60, and monthly medication and specialized food for her dog would be $250.  The renewal fees for her

5.

cosmetology license are approximately $75 per year. Her required annual continuing education programming to maintain that license ranges in cost from "hundreds to thousands" of dollars. Wife noted that she would also incur unknown monthly expenses for her utilities at the rental property but could not identify any additional expenses.

{¶ 11} Regarding her current living arrangements, Wife stated that she moved out of the marital residence in March, 2022, and began living in a residence owned by her parents. She has not entered into a lease agreement with her parents and has not paid them any rent. She testified that the $1,100 rent payment identified as her future rent expenses will be paid to her parents through the terms of a written lease agreement to be executed once the divorce proceedings were concluded.

{¶ 12} Wife's counsel next questioned her about Husband's pretrial representations that his income had fallen recently due to inventory issues, including a shortage of "chips" necessary for vehicle assembly. Although she did not specify any individuals by name, Wife testified that she knew "other people" that worked with Husband that worked 60 hours per week. She stated that this amount of work was available but that Husband elected to take paid time off one to three days a week to perform shows with his band. She attributed these days off to any claimed reduction in income rather than Husband's inability to work due to supply issues. Wife did not know how much Husband currently received per show but had previously seen him receive

6.

between $150 and $200 per show. She testified that Husband kept this money for himself and that it was not included in their household income.

{¶ 13} On cross-examination, Wife again conceded that she had not inquired into any disability benefits that might be available to her. She attributed her delay in seeking out these services to time spent dealing with her health conditions and the time she has spent "packing up a twenty-two-year marriage home and a whole two-story barn" in advance of their pending divorce. She also noted that she spends approximately five hours a day packing up the residence but that those hours are divided by breaks necessary for pain relief. She did not believe that she could maintain employment at this same pace due to her frequent need for breaks. To expedite the packing process, she has enlisted the help of her mother and her neighbor's kids since she is unable to consistently perform those tasks on her own.

{¶ 14} Regarding her health, Wife stated that she had documentation supporting each of her claimed medical issues. When asked why she did not provide these documents at trial, Wife stated that she was advised that she could not introduce them because the doctors themselves would not be there to testify. She acknowledged that the records were not included in the exhibit summarizing her health issues. Regarding her need for insurance coverage due to the cost of treatment for those conditions, Wife testified as follows:

7.

HUSBAND'S COUNSEL: And you want him [Husband] to pay an additional $1,000, over $1,000 so that you can maintain your own private insurance?

WIFE: I'm just asking for what I am entitled to or feel I am entitled to.

{¶ 15} At the close of Wife's testimony, her counsel moved that each of her exhibits, including her claimed living expenses and her list of medical conditions, be moved into evidence. Husband did not object and the trial court admitted the exhibits. With the admission of her exhibits, Wife rested her case-in-chief.

### Testimony of Joseph Norton

{¶ 16} Husband began his testimony stating that he was in his 28th year of employment with Jeep Toledo. At the time of trial, he was typically scheduled to work 60 hours per week. He stated that those hours were not guaranteed, however, because while "we all want to work the six tens" they will sometimes be sent home partway through a shift. He attributed the short shifts to logistical issues with obtaining vehicle parts.

{¶ 17} Husband then turned to his W2 forms to establish his income. He confirmed that his 2020 W2 reflected gross wages of $87,587 with additional unemployment compensation in the amount of $8,274. His 2021 W2 reflected gross wages in the amount of $97,644.23. He did not receive any unemployment compensation in 2021. Although he was not asked any substantive questions about his earnings in

8.

2017, 2018, and 2019, the composite exhibit introduced during his testimony reflected annual gross wages for those years in the amount of $107,145.31, $109,466, and $116,391.31, respectively.

{¶ 18} Husband testified that he expected to receive less in gross wages in 2022 than he had in prior years due to an ongoing chip shortage that resulted in reduced hours until those chips became available to satisfy his employer's needs. To support his claim of reduced wages in 2022, Husband introduced paycheck stubs for the weeks of July 1st, July 15th, and August 12th of that year.[6] These stubs reflected gross wages in the amounts of $2,112.54, $1,802.60, and $1,7844.10, respectively. Husband claimed that the lower amounts for the paystubs for the weeks of July 15th and August 12th represented his anticipated earnings should ongoing global logistics issues result in a reduction in hours. Husband did not identify any specific time period for such a reduction but claimed that the automotive industry is "shaky right now." Husband denied that playing in a band negatively impacted his income as he was paid for any time off through his company benefits.

{¶ 19} Husband next testified about his belief that Wife was capable of working. He believes that she has the computer skills necessary to "land an office job or something." He also noted that any lack of skills could be resolved through on-the-job

---

[6] Five additional paystubs from 2022 were introduced in a separate exhibit but neither party elicited testimony related to that additional exhibit.

9.

training he believed would be part of any job for which Wife would be hired.  He did not dispute Wife's claimed health issues stating:

> I am fully aware of all of her health things.  I was there.  I was there.  Those diagnoses, I lived with it.  * * * I know for a fact that that you know, she probably will never be able to do a Jeep job or a hydromatic job or a laborer job.  I accept that.  I understand that.

Despite these physical limitations, Husband believed that Wife would "have to get a job sooner or later."

{¶ 20} Husband concurred with Wife's testimony regarding their standard of living during their marriage.  He noted that money was never an issue and that they attended concerts and made casino trips several times throughout any given year.  He also testified that they would typically take a vacation once per year.  However, he claimed that since their separation, his standard of living has been reduced due to an increase in his monthly expenses.

{¶ 21} On cross-examination, Husband acknowledged that his allegedly-increased monthly expenses were related to maintaining the mortgage and utilities at the marital residence only.  He had not paid rent or utilities since the parties' separation and his moving out of the residence because he had been living with someone else during that time.  Having just testified that his monthly expenses had increased, Husband clarified that his claimed reduced standard of living was actually just his response to realizing how

much he and Wife were spending during their time together, as discovered through the divorce proceedings. It was not the result of an increase in his own expenses. He also acknowledged that he had not suffered a forced reduction in hours since a shut down in 2020 as a result of the COVID pandemic and that the chip shortage he identified as a possible basis for reduced hours had never resulted in a reduction in hours during his employment.

{¶ 22} At the conclusion of Husband's testimony, he moved for the admission of exhibits, including his W2 forms and eight paystubs from 2022, into evidence. The trial court granted the motion without objection and Husband rested his case-in-chief.

### The trial court's preliminary order and final judgment

{¶ 23} At the conclusion of trial, the court advised the parties that it would not require closing arguments or briefs. The parties did not object and the trial court took the matter under advisement.

{¶ 24} On September 2, 2022, the trial court entered a preliminary decision granting Wife an award of spousal support in the amount of $3,000 per month for a period of 84 months. The trial court, noting that Wife would lose her insurance coverage through Husband's employer upon the granting of their divorce, also ordered Husband to pay two-thirds of the premiums for Wife's continued insurance coverage under the Consolidated Omnibus Budget Reconciliation Act. The COBRA-related support payment was ordered to end when that coverage expires by operation of law.

11.

**{¶ 25}** That preliminary order was incorporated into the trial court's October 4, 2022 Judgement Entry of Divorce. The judgment entry also included a summary of the parties' prior marital property division settlement read into the record at the August 7, 2022 hearing.

## B. Assignment of Error

**{¶ 26}** Husband timely appealed from the trial court's Judgment Entry of Divorce and asserts the following errors for our review:

> 1. The trial court erred in that it issued an award that [Husband] does not have the ability to pay.

> 2. The trial court erred in finding that [Wife's] income earning ability for spousal support purposes was $0.

> 3. The court erred in not considering the parties' stipulated property and debt division in awarding spousal support.

> 4. The court erred in considering the cost of [Wife's] future rent and health insurance in issuing the spousal support award in her favor.

## II. Law and Analysis

**{¶ 27}** Each of Husband's assigned errors challenges the trial court's award of spousal support. We review the trial court's judgment awarding spousal support for an abuse of discretion. *Salpietro v. Salpietro,* 2023-Ohio-169, 205 N.E.3d 1203, ¶ 27 (6th Dist.), citing *King v. King,* 6th Dist. Erie No. E-17-072, 2019-Ohio-1561, ¶ 8. An abuse

12.

of discretion means the trial court's decision was unreasonable, arbitrary, or unconscionable. *Id.,* citing *State ex rel. Askew v. Goldhart,* 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996).

{¶ 28} Although a trial court has broad discretion in awarding spousal support, "its determination of whether spousal support is 'appropriate and reasonable,' and the nature, amount, duration, and terms of payment of spousal support is controlled by the factors in R.C. 3105.18(C)(1)." *Id.* at ¶ 28, citing *King* at ¶ 8. A trial court's judgment does not need to articulate its consideration of the factors identified in R.C. 3105.18(C)(1) but must show that it considered the "relevant factors." *Id.* The trial court does not consider any one R.C. 3105.18(C)(1) factor in isolation but must consider all relevant factors with the goal of reaching an equitable result. *Id.* at ¶ 30. The judgment must also "contain sufficient detail to enable a reviewing court to determine that the spousal support award is 'fair, equitable, and in accordance with the law.'" *Id.*

{¶ 29} Utilizing this rubric for our review, we find that the trial court did not abuse its discretion in awarding spousal support to Wife. While we must consider the record as a whole and not consider any one factor in isolation to determine whether the trial court abused its discretion in determining its award of spousal support, Husband assigns error to the trial court's consideration of certain factors individually. We address the merits of Husband's individual arguments, in turn, before addressing whether the trial court abused its discretion in awarding spousal support based on all relevant factors.

13.

### 1. *The trial court did not abuse its discretion in determining Husband's income when it awarded spousal support.*

{¶ 30} In his first assignment of error, Husband argues that the trial court granted an award of spousal support that exceeds his income, making it impossible for him to comply with the trial court's order. Specifically, Husband argues that the trial court improperly determined his income based on his average annual income for the five years preceding the divorce rather than basing it on his average pay during the eight weeks of 2022 reflected in the pay stubs he introduced at trial. This, he argues, shows that the trial court did not consider his ability to pay the spousal support award because that award exceeded his average income during those eight weeks. We disagree.

{¶ 31} The ability to pay an award of spousal support is not enumerated in R.C. 3105.18(C)(1) as a factor the trial court must consider in determining the amount of spousal support. However, "[i]t is well-established that an award of spousal support shall not exceed the obligor's ability to pay support." *Kelly v. Forbis,* 6th Dist. Wood No. WD-09-050, 2010-Ohio-3071, ¶ 37, citing *Norbut v. Norbut,* 2d Dist. No. 06-CA-112, 2007-Ohio-2966, ¶ 21. Husband correctly notes that a trial court's failure to consider the obligor spouse's ability to pay can result in an abuse of discretion. *See Marsh v. Marsh,* 6th Dist. No. OT-09-036, 2010-Ohio-5023 (holding that the trial court's failure to consider obligor's ability to pay in light of his "relative assets and liabilities" as described in R.C. 3105.18(C)(1)(i) constituted an abuse of discretion). We note that a party's income is not the only factor related to a party's ability to pay. *Id.* ("All of the factors

14.

enumerated in R.C. 3105.18(C)(1) relate, either directly or indirectly, to the obligee spouse's need or the obligor spouse's ability to pay."). However, Husband's argument here is that the trial court did not consider his ability to pay because the award exceeds his income when his income is determined using his preferred calculation method. Husband does not argue that the trial court's consideration of any other factor reflected its purported failure to consider his ability to pay the award. Therefore, we limit our analysis to whether the trial court's determination of Husband's income constituted an abuse of its discretion.

{¶ 32} R.C. 3105.18(C)(1)(a) requires the trial court to consider "[t]he income of the parties" when determining the appropriate amount of spousal support. In both its preliminary order and its final judgment entry, the trial court determined that Husband's average annual income between 2017 and 2021 was $105,461.49 based on the W2s Husband provided. The trial court also determined, based on the paystubs Husband introduced at trial, that even if he worked only 40 hours for the remainder of 2022 that he would still exceed his annual income earned in 2020 and 2021—the two lowest annual income reported over the five years prior to trial. The trial court noted that it was "highly likely [Husband] will work in excess of 40 hours each week" for the remainder of 2022. As a result, the trial court found that Husband's reduced income in 2020 and 2021 was the result of forced shutdowns during the COVID pandemic and that his 2022 income

will be comparable to his pre-COVID income—that is, more than his average over the past five years.

{¶ 33} Husband argues that the trial court erred because the paystubs he submitted during trial, when averaged, show that he was only working 48.68 hours per week. This results in an average take-home pay of $5,264 per month. With his own monthly expenses totaling $2,146, he is left to make the spousal support award of $3,666[7] from the remaining $3,118. Therefore, he argues, the trial court granted Wife an award of spousal support that exceeds his ability to pay by approximately $500 per month and, in doing so, shows that the court could not have considered his ability to pay that award. Having reviewed the record, we find that the trial court did not abuse its discretion in determining Husband's income.

{¶ 34} The trial court's judgment referenced its consideration of Husband's annual salary for the five years prior to trial. Additionally, the trial court considered Husband's year-to-date income as of his August 7, 2022 pay period was $75,660.56 and found that if Husband worked a minimum of 40 hours for the remainder of the year that he would exceed his pre-pandemic income. Husband's testimony at trial supports the trial court's

---

[7] The trial court ordered Husband to pay $3,000 in spousal support plus 2/3 of any COBRA premiums. Husband argued that the COBRA premiums are $1,000 per month. Although the testimony is unclear as to this amount, and neither party provided any documentary support to establish this amount, Wife does not dispute Husband's assertion of this as the COBRA premiums. Because Husband argues that the trial court erred in calculating his income rather than establishing the amount of spousal support, this discrepancy is immaterial to our resolution of this issue.

16.

conclusion. Husband testified that other than a period of unemployment at the beginning of the COVID pandemic in 2020, that he has not had a forced reduction in hours that would reduce his annual income. To the contrary, Husband testified that his employer essentially demands that its employees work extended hours up to 60 hours per week rather than hiring additional employees. Moreover, while Husband suggested that a chip shortage could result in reduced hours in the future, he testified that his employer had secured a contract to resolve that issue and that he had never been subject to a reduction in hours related to that issue. In light of the evidence before it, including Husband's testimony and the evidence he introduced, we cannot say that that the trial court's calculation of Husband's income was unreasonable.

{¶ 35} Notably, even assuming Husband is correct and that the trial court should have considered only the average income reflected in the sporadic 2022 paystubs he introduced at trial, the trial court's conclusion that his income would exceed his pre-pandemic income is still correct. Husband argues that these paystubs showed that he worked an average of 48.68 hours per week. Those pay stubs also reflect his base hourly pay rate of $51.90 per hour. That results in an average weekly income of $2,526.49 and, over the course of 52 weeks, an annual income of $131,377.58. That amount exceeds his 2019 income of $116,391.31, the highest of his annual pre-pandemic income identified at trial, by $14,986.27. Therefore, Husband's proposed method for calculating his income

17.

also supports the trial court's finding that his income will exceed his pre-pandemic annual income.

{¶ 36} In sum, Husband's argument that the trial court granted an award of spousal support without considering his ability to pay simply based on a miscalculation of his income is without merit. The evidence presented at trial, that Husband himself introduced, shows that he will either meet or exceed his average annual income over the past five years. This is true even when using the average weekly hours calculation method Husband argues the trial court should have utilized. While Husband may believe that the amount of the spousal support award exceeds his ability to pay, he has not shown that the trial court did not consider his ability to pay. For these reasons, we find that the trial court did not abuse its discretion in determining Husband's income and appellant's argument to the contrary is without merit.

### 2. *The trial court did not abuse its discretion in determining that Wife's earning ability was $0.*

{¶ 37} In his second assignment of error, Husband challenges the trial court's determination that Wife's earning ability was $0. R.C. 3105.18(C)(1)(b) requires the trial court to consider "[t]he relative earning ability of the parties" when determining an award of spousal support. Husband argues that while Wife suffered from multiple health issues that may prevent her from performing her preferred work as a cosmetologist, that the trial court erred in finding that she had no earning ability because she could seek employment in another field.

18.

{¶ 38} Initially, we note that Husband's recitation of the trial court's judgment is incorrect. Husband argues that the trial court found that Wife's earning ability was $0. The trial court's actual finding was that Wife's *income* was $0 when it considered the parties' income pursuant to R.C. 3105.18(C)(1)(a). As to Wife's earning ability as described in R.C. 3105.18(C)(1)(b), the trial court made no specific finding. Instead, the trial court noted that Wife suffered from multiple health issues that prevented her from standing or sitting for long periods of time. The trial court also noted that Wife did not believe that she had the skills necessary for Husband's suggested employment in data entry but that she was willing to explore other employment opportunities "at some point." The trial court also noted that Wife's immediate earning ability may be limited due to an upcoming double knee replacement and the resulting "significant recovery time." Despite its identification of these issues, the trial court did not find that Wife had no earning ability.

{¶ 39} Notwithstanding Husband's inadvertent misstatement of the trial court's findings, his assigned error challenges the trial court's consideration of Wife's earning ability as it relates to her claimed medical issues. The crux of Husband's argument is that Wife merely listed her claimed medical issues that limit her ability to work without providing any documentation or expert testimony to support them. Husband cites three cases which he claims supports the conclusion that the trial court abused its discretion in considering Wife's testimony when it considered her earning ability pursuant to R.C.

19.

3105.18(C)(1)(b). Each of these cases are distinguishable from the facts of the present case.

{¶ 40} In *Bailey v. Bailey,* 6th Dist. Sandusky No. 20 CAS 14, 2020-Ohio-4333, the spousal support obligee established that she had a documented disability that limited her earning ability. *Id.* at ¶ 3. On appeal, she argued, in part, that the spousal support award should have been indefinite rather than terminating after 8 years. *Id.* at ¶ 15. This court found that while the obligee spouse had a limited earning ability, her work in providing daycare services while disabled showed that she could become self-supporting at some point and she was not entitled to an indefinite award of spousal support. *Id.* at ¶ 15. Here, Husband argues that *Bailey* stands for the proposition that there must be a "connection between a spousal support recipient's *legitimate* disability * * * and her earning ability." (emphasis sic.).

{¶ 41} Careful review of our decision in *Bailey* shows that the legitimacy of the claimed disability was never at issue. Instead, the question was whether the recipient of the spousal support award had earning ability in spite of that disability. Husband's argument here is that our decision in *Bailey* now requires, ostensibly as a matter of law, that any claimed reduction in earning potential must be supported by documentary evidence or expert testimony to be considered a "legitimate" basis to find a reduced earning ability. This argument improperly expands our holding in *Bailey* as that decision was limited to the facts therein. Further, requiring Wife to produce documentation

20.

supporting her claimed medical issues would be superfluous in this case because Husband did not dispute the legitimacy of those issues at trial. He merely argued that Wife could work and earn income despite those issues. It is unclear, then, how Husband's construing our decision in *Bailey* as requiring Wife prove the legitimacy of her claimed medical issues, when that issue was not in dispute, is relevant to our analysis here. As a result, *Bailey* is inapplicable and does not assist in our analysis of the trial court's consideration of Wife's earning ability.

{¶ 42} Husband next cites *Riley v. Riley,* 6th Dist. Huron No. H-08-019, 2009-Ohio-2764, in which this court held that the trial court did not abuse its discretion in denying a party's motion to introduce evidence after the final divorce hearing to further document her claimed disability to show her need for spousal support. *Id.* at ¶ 22. Husband argues that our holding in *Riley* requires a party to provide documentation or expert testimony establishing their claimed medical issues at trial before those issues can be considered in regard to their earning ability. This is a misapplication of our holding. The issue in *Riley* was limited to whether the trial court abused its discretion under Civ.R. 53(E)(4)(b) when it denied the obligee spouse's motion to present additional evidence after trial, not the trial court's consideration of a parties' earning ability under R.C. 3105.18(C)(1)(b). *Riley* is plainly distinguishable from the present appeal and offers no guidance for our resolution of Husband's assigned errors.

21.

**{¶ 43}** Lastly, Husband cites *Bachtel v. Bachtel,* 7th Dist. Mahoning No. 03 MA 75, 2004-Ohio-2807, to argue that Wife's "self-serving testimony" was insufficient to show that she had a reduced earning ability. In *Bachtel,* the Seventh District Court of Appeals affirmed the trial court's conclusion that the obligee spouse's claim that she could not work full-time was not credible. *Id.* at ¶ 24-30. While finding that her testimony lacked credibility, the trial court stated that had she presented documentation or expert testimony supporting her claims that it might have alleviated the court's credibility concerns. *Id.* at ¶ 24. Husband argues that because the trial court in *Bachtel* commented on the lack of supporting documentation in that case, that Wife's claimed medical issues here could not be considered credible unless they were supported by documentation or expert testimony. The Seventh District Court of Appeals in *Bachtel* expressly rejected that conclusion, stating that the trial court's reference to expert testimony that could have assisted in resolving any concerns over the party's credibility did not mean that expert testimony is always required to support a claim of reduced earning ability. *Id* at ¶ 30. The court's rejection of Husband's argument in the same decision that he cites in support of that argument shows that *Bachtel* is entirely inapplicable to the issue presented here.

**{¶ 44}** Beyond his citation to *Baily, Riddle,* and *Bachtel,* Husband offers no argument as to how the trial court abused its discretion when it considered Wife's medical issues in regard to her earning ability pursuant to R.C. 3105.18(C)(1)(b). What

22.

we are left with, then, is a record that reflects Wife's undisputed medical diagnoses and the trial court's clear articulation that those issues were relevant to Wife's earning ability. Accordingly, the trial court did not abuse its discretion in considering those undisputed, relevant issues.

### 3. The trial court's failure to articulate its consideration of the parties' property division in determining the amount of spousal support was not an abuse of its discretion.

{¶ 45} In his third assignment of error, Husband argues that the trial court abused its discretion by "not considering the parties' stipulated property and debt division in awarding spousal support." In support of this argument, Husband claims that while the trial court's judgment references the terms of the parties' property division settlement, it never "applied" that settlement when it awarded Wife spousal support. Husband's argument is unfounded.

{¶ 46} R.C. 3105.18(C)(1)(i) requires the trial court to consider "[t]he relative assets and liabilities of the parties" when determining an award of spousal support. A trial court's judgment, however, does not need to articulate its consideration of the factors identified in R.C. 3105.18(C)(1). *Salpietro,* 2023-Ohio-169, 205 N.E.3d 1203, at ¶ 28. The judgment must only show that it considered the "relevant factors." *Id.* The trial court's judgment expressly found that R.C. 3105.18(C)(1)(i) was a relevant factor in its determination of spousal support. Husband offers no argument as to how the trial court failed to consider that factor beyond the lack of a specific articulation of its impact on the

23.

spousal support award—an articulation that is simply not required. *Id.* Therefore, the trial court's failure to articulate how its consideration of the parties' assets and liabilities following the parties' division of marital property impacted its judgment does not constitute an abuse of discretion.

### 4. *The trial court did not err in considering Wife's anticipated rent and medical insurance expenses in determining the spousal support award.*

{¶ 47} In his fourth assignment of error, Husband argues that the trial court erred when it considered Wife's anticipated rent and insurance premium expenses when it determined the amount of spousal support. At trial, Wife testified as to these expenses stating:

> I do have a house that I am going to rent. The rent is going to be $1,100 a
>
> month. I don't know what health insurance is going to cost me because
>
> they could not give me a definitive answer, but it is going to be $1,000 plus
>
> a month.

Husband did not object to this testimony. On cross-examination, Wife confirmed that she was not currently paying rent but testified that she would incur rent expenses upon the completion of the parties' divorce. During his own testimony, Husband noted his belief that Wife had not paid any rent since moving out of the marital residence. He did not make any effort to challenge the claimed cost of Wife's health insurance premium. The trial court's judgment entry included the rent and insurance premium costs as part of Wife's monthly living expenses. Husband argues that because these amounts were not

24.

supported by documentation, and therefore were speculative, that the trial court abused its discretion in considering these amounts in determining the award of spousal support. We address these arguments in turn.

{¶ 48} First, Husband raises his argument regarding the lack of documentation of these expenses for the first time in this appeal. At trial, Husband offered no objection to Wife's testimony regarding these expenses as requiring corroborating documentation. He now asks this court to find the lack of documentary support for these expenses as a reason the trial court erred in considering them. "Arguments raised for the first time on appeal are generally barred." *Lester v. Don's Automotive Group, LLC,* 2021-Ohio-4397, 181 N.E.3d 1239, ¶ 49. "Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process." *Id.* Here, Husband's failure to object to Wife's claimed rent and health insurance premium expenses clearly evaded the trial court's resolution of any issues related to the lack of documentation. As a result, Husband waived this issue by attempting to raise it for the first time in this appeal and we are precluded from addressing this argument.

{¶ 49} Second, Husband argues that trial courts are not allowed to consider speculative living expenses when determining an award of spousal support as a matter of law. Indeed, living expenses are not one of the factors a trial court must consider pursuant to R.C. 3105.18(C). The trial court's consideration of a party's living expenses is discretionary, though, and may be considered if the court finds such expenses to be

25.

relevant. *Derrit v. Derrit,* 163 Ohio App.3d 52, 2005-Ohio-4777, 836 N.E.2d 39 (11th Dist.). Here, the trial court's judgment entry identified Wife's monthly living expenses as relevant to its determination of spousal support. It was within the trial court's discretion to consider these expenses. *Id.* Husband's assertion that the trial court was prohibited from considering Wife's living expenses as a matter of law, and abused its discretion simply by doing so, is unfounded.

{¶ 50} Because each of his arguments related to the trial court's consideration of Wife's living expenses are without merit, Husband has not shown that the trial court abused its discretion in considering those expenses.

### 5. *The trial court did not abuse its discretion in awarding Wife spousal support.*

{¶ 51} Having determined that Husband's individual arguments regarding the trial court's consideration of certain factors in awarding Wife spousal support are without merit, we are left to determine whether the trial court's judgment provides sufficient detail to enable this court to determine that the spousal support award is fair, equitable, and in accordance with the law. *Salpietro,* 2023-Ohio-169, 205 N.E.3d 1203, at ¶ 28. The trial court's judgment shows that Wife suffers from significant medical health issues that limit her ability to earn income to support herself. Further, the judgment reflects that Wife identified monthly expenses that she will be unable to pay if the trial court did not grant an award of spousal support. Finally, the judgment references the evidence Husband introduced showing that his 2022 income is likely to exceed his annual income

26.

over the previous five years. Each of these findings relate to the R.C. 3105.18(C) factors the trial court must consider when determining an award of spousal support and are supported by the record. Therefore, we find that the trial court's judgment provides sufficient detail to show that the spousal support award is fair, equitable, and in accordance with the law. As a result, we find that the trial court did not abuse its discretion in granting Wife an award of spousal support and each of Husband's assigned errors are found not well-taken.

### III.  Conclusion

{¶ 52} For the foregoing reasons, we find appellant, Husband Joseph Norton's first, second, third, and fourth assignments of error not well-taken. We affirm the October 4, 2022 judgment of the Lucas County Court of Common Pleas, Domestic Relations Division.

{¶ 53} Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.            _____
                                                        JUDGE
Gene A. Zmuda, J.

                                             _____
Myron C. Duhart, P.J.                     JUDGE
CONCUR.

                                             _____
                                                        JUDGE


27.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.